## ROOSEVELT BOONE v. STATE OF MARYLAND

[No. 106, Initial Term, 1967.]

82

*Decided September 28, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and O'DONNELL, J., Associate Judge of the Eighth Judicial Circuit specially assigned.

*Robert F. Freeze,* with whom was *Robert Conrad* on the brief, for appellant.

*Frank A. DeCosta, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Peregoff, Assistant State's Attorney for Baltimore City,* and *James A. Gede, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court.

Appellant, Roosevelt "Zip" Boone, together with Abraham Goode, known as "Tomboy," Alphonso Obadiah Craft, and James Kitt, were jointly indicted on January 29, 1965, by the Baltimore City Grand Jury, charged with armed robbery and with murder in the first degree, as a result of the hold-up of Burman's Cafe and the killing of Charles O. Hazard, the bartender, on the early morning of January 2, 1965.

Following the decision in *Schowgurow v. State,* 240 Md. 121, 213 A. 2d 475 (1965) and under the holdings in *Smith v. State,* 240 Md. 464, 214 A. 2d 563 (1965), he elected to have those indictments declared invalid and was re-presented and re-indicted on November 2, 1965, with the same co-defendants for the armed robbery and, with the exception of Abraham Goode, for murder in the first degree (in the interval, in a separate proceeding, Goode had pleaded guilty to murder in the second

degree and had been sentenced). Appellant requested a change of venue and an order was signed in the Criminal Court of Baltimore removing the case to the Circuit Court for Baltimore County for trial.

A Motion for Discovery and the Answer thereto filed in the earlier indictments were re-filed on March 4, 1966. The Appellant also filed a Motion to Dismiss the Indictments, alleging that his arrest had been illegal, that "all steps which followed the arrest were illegal," and alleging that he had been placed in double jeopardy. In addition, he filed a Motion to Suppress Evidence alleging an illegal arrest, that the arrest warrant was invalid, that he was not advised of his right to remain silent, nor of his right to counsel, that he was denied counsel prior to interrogation, and that the statement was not freely and voluntarily given; he moved that the statement be suppressed.

Prior to trial, Judge John E. Raine, Jr., denied the Motion to Dismiss on the ground of double jeopardy and, after conducting a pre-trial hearing, denied the Motion to Suppress, ruling that the arrest was lawful and that the statement was admissible.

After a jury trial, presided over by Judge Raine, Appellant was convicted on the first and second counts of the armed robbery Indictment and was convicted of murder in the first degree. His Motion for a New Trial was granted on the murder conviction. From the sentence imposed (18 years in the Maryland Penitentiary, reduced to 17 years on April 1, 1966) on the armed robbery conviction, he appeals.

Counsel for Appellant, in his Brief and in argument, contends that the trial court committed error (1) by admitting the statement into evidence, (2) by refusing to allow Appellant to summons and call certain witnesses, (3) in permitting the State to re-open the testimony on the Motion to Suppress after it had rested, (4) in permitting the State to interrogate Appellant as to whether or not he had been previously convicted of crime, and (5) in allowing leading questions "on crucial issues" in the trial. His counsel also (6) challenges the sufficiency of the evidence to sustain the conviction and contends (7) that

the verdict of the jury of "guilty" on the first and second counts of the Indictment was improper.

# I

## MOTION TO SUPPRESS

Appellant's first three (3) contentions, all relating to alleged errors on the part of the trial court, in connection with its rulings on the Motion to Suppress his statement, may be considered together.

Lt. Cadden of the Homicide Squad of the Baltimore City Police Department, testified that on January 7, 1965, he received information from Sgt. Callahan that "Tomboy" Goode, who was in custody, had in a written statement admitted his participation in the robbery and homicide, had named Boone as one of his accomplices and had identified his photograph. Upon this information, a warrant was issued for Appellant's arrest, but he was "at large" until brought to Police Headquarters about 11:00 P.M. on January 20, 1965, after having surrendered to Sgt. Watkins.

Lt. Cadden testified further that the written statement was given within 20 minutes after Boone arrived at Police Headquarters and after he had told the officers about the case; that Boone was admonished that he did not have to give a statement, did not have to discuss the matter at all, that no request, nor any mention of, an attorney was made by him; that both he and Sgt. Watkins were present during the entire interrogation; that no threats were made to him, no force or violence was used or exhibited; that Boone was "eager to discuss the case" and that after he typed the six (6) page statement, verbatim as Boone told it, he read it, signed it, initialed each page and made initialed corrections in it. He testified that Sgt. Watkins made no statement at the interrogation that either Boone, or his wife, had advised him that they had retained an attorney.

Appellant, 36 years of age, who had completed third-year high school, on the Motion testified that "he was in big trouble," knew that a warrant was outstanding for his arrest, but being afraid of "what might happen to him at the hands of the police" had attempted, by seven or eight phone calls, to contact

88

Sgt. Watkins (of his own race) on January 20th, so that he might surrender to him. He requested Sgt. Watkins to come alone to his mother's home (she did not wish the neighborhood disturbed by a number of policemen at her home) and Sgt. Watkins assured him and the family that no harm would come to him at the hands of the police and that he would be with him while he was being interrogated.

He contended that enroute to the Police Station in the Sergeant's private car, he told the Sergeant that he was "submitting to the warrant, but wouldn't say anything until his lawyer came," that the Sergeant told him he didn't need a lawyer, that no one would mistreat him and advised him not to say anything at the interrogation unless Watkins was present. He further stated that during the ride, in the Sergeant's presence, his wife stated that "she would call his lawyer." He acknowledged that notwithstanding his self-serving statement that "he wouldn't say anything until his lawyer came," he had told Sgt. Watkins substantially the same things as were recorded in the statement.

He testified that while in the cell in the Police Station he requested permission about 9:35 P.M. of a turnkey "to make a phone call," was told that the Desk Sergeant would be asked, but never again saw the turnkey or the Desk Sergeant until he was being transported to Headquarters. He later testified that he had told the turnkey he wanted "to phone his lawyer," but had been advised that he was "not permitted to make a phone call."

He testified that when he entered the Interrogation Room at Headquarters, one of the nine (9) officers present was "beating a blackjack in his hand," that another "slammed a chair against the wall," and that he had told an unidentified Lieutenant (not Lt. Cadden) that he was "waiting for his lawyer before he would discuss the case with them." He denied that he was advised of his right to remain silent, or that he was not required to give evidence against himself, nor that what he said would be used against him, although he knew that this was "standing law." He contended that although reluctant to give a statement, he "submitted" because of the general atmosphere in the room where the police appeared hostile. He admitted

signing the statement but denied having read it. He explained his initials and corrections "because he was told to do so."

On cross-examination he admitted that he knew he was entitled to consult with an attorney and knew he had a right to remain silent and acknowledged that the statement was made "not because he didn't have a lawyer, but because of threats of the officers." He admitted that he believed that his wife had contacted an attorney who was enroute and knew that he could have waited for his attendance but contended that he "believed he may have been subject to violence—that the officers by their very presence presented a definite threat to him." Although he admitted that he knew he was to be questioned about the robbery at Burman's Cafe and had been assured that no harm would come to him when he surrendered to Sgt. Watkins, he "didn't want to tell the police what he knew."

His wife testified that while in Sgt. Watkin's car, Boone had asked her to "call Lawyer Brager" but that she had been unable to contact him until the following day. (Between January 2nd, the date of the crime, and his surrender to Sgt. Watkins on January 20th, no attorney had been retained, nor had the Appellant discussed the case with any attorney. The day after the statement was given an attorney did visit the Appellant at Police Headquarters, but never was engaged by him.)

Lt. Manuel, Sgt. Callahan and Officer Rout were called as witnesses by Appellant and testified that Goode had been arrested at Crownsville State Hospital only after they had been assured by its Clinical Director that his condition was normal and that he showed no ill effects from any (narcotics) withdrawal symptoms. It was elicited that about 4 hours after Goode had given his statement concerning his participation and that of the Appellant in the robbery and homicide, he was taken to Mercy Hospital for treatment after he complained of feeling ill. Appellant at that stage advised the trial court that although Goode was not in attendance, he wanted to question him and question the police officers who had taken him to Crownsville Hospital. No summonses had been issued by Appellant for any of these witnesses and the trial court denied a request for a continuance to permit them to be summoned and questioned. No proffer was made by Appellant as to the nature of the testi-

mony he expected to elicit from these witnesses, nor that their evidence was material and relevant, nor that he had taken any steps to secure their attendance.

Sgt. Callahan, in rebuttal for the prosecution, testified that he was present during the entire interrogation; he denied that any threats or promises were made to Boone, denied that anyone had "whipped a blackjack in his hand," denied that anyone had "banged a chair against the wall" to frighten or threaten him, that it was not necessary to question him at any length since he was "anxious to tell us all about it," and further testified that Boone had read over the entire typed statement.

When the State indicated that it had rested its case on the Motion to Suppress, counsel for Appellant (citing *Escobedo v. Illinois,* 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964), *Streams v. State,* 238 Md. 278, 208 A. 2d 614 (1965), and *Thiess v. State,* 235 Md. 541, 201 A. 2d 790 (1964)) contended that since neither Sgt. Watkins nor the turnkey had been called as witnesses, that the State had failed to rebut Appellant's testimony, had failed to meet its burden of proof and that the statement should be ruled inadmissible.

After a colloquy between the trial court and counsel on the holdings in *Hyde v. State* (240 Md. 661, 215 A. 2d 145 (1965)) and *DeToro v. Pepersack* (222 F. Supp. 621, Affm'd. 332 F. 2d 341) the State requested permission to re-open the case on the Motion in order that Sgt. Watkins and the turnkey might testify. Appellant's counsel objected, contending that Rule 725 of the Maryland Rules did not provide for the re-opening of evidence in connection with such a Motion.

Judge Raine overruled the objection stating: "that miscarriages of justice work both ways; the State has as much of an interest in the litigation as the Defendant," and pointing out the broad discretion vested in the trial court, stated that he did not believe it would be an abuse of that discretion to grant permission to re-open the testimony over the objection of the defendant.

Sgt. Watkins then testified that Boone, known to him for a number of years, had made numerous attempts to phone him on January 20th and when finally contacted, stated that he was "afraid that if he stayed on the street he would be shot by a

policeman;" that he wanted to turn himself in. Watkins assured him, and his family, that he would not be mistreated or manhandled by the police; that on the ride to the Police Station, Boone told him about the hold-up of Burman's Cafe and about the original plan to rob "Melvin," who was suspected of dealing in narcotics. Boone told him that he wanted to tell what he knew and "get it off my mind."

Sgt. Watkins told him that after he was taken to the Northern Police Station he would be transferred to Detective Headquarters, but that he would remain with him during any interrogation. He denied that there had been any conversation between Boone and his wife about contacting a lawyer; that no such request was made, while riding in the car, while he engaged in "small talk" with Boone for a 10 or 15 minute interval at the Northern Police Station, nor while at Police Headquarters.

Sgt. Watkins did accompany Boone to the interrogation and did remain during the entire questioning; he denied that anybody slapped blackjacks in their hands or that any chairs were hit against the wall; he stated that Boone was willing to tell his side of the story.

Officer Huster, the turnkey on duty at the Northern Police Station until 10:15 p.m. on January 20th, testified that he did not remember Boone, but his records showed that he had been placed in a cell at 9:50 p.m. and was transferred to Police Headquarters at 11:00 p.m. and that there was no record of him having made a telephone call. He stated that if Boone had made such a request, he would have been allowed to make the call, but that he had no recollection of any such request.

Recalled as a witness, Appellant acknowledged that during his conversation with Sgt. Watkins, while in the Police Station cell, he had said nothing to him about requesting to make a phone call, that thereafter "his mind began to focus on his position" and he then made his request of the turnkey.

Judge Raine ruled that Boone's arrest was lawful, finding that the Police had knowledge that a felony had been committed and had ample probable cause to believe that he had been a perpetrator and that although he could have been arrested without a warrant, he had been arrested on a valid one.

In his oral opinion denying the Motion to Suppress the Statement and ruling it admissible, he found as facts, from the credible evidence that Boone had not told Sgt. Watkins that he would not give a statement until his lawyer appeared, that Sgt. Watkins did not tell him that he did not need a lawyer, and that no request for an attorney had been made by him. He found that Appellant's testimony on this point was not only not believable but was inconsistent with his repeated efforts to surrender to Sgt. Watkins and was inconsistent with the verbal account given to the Sergeant, enroute to the Police Station, about his participation in the crime. He pointed out that if there had been any thought or effort on the part of Boone to secure a lawyer, he would have communicated that request to Watkins, the only police officer he was prepared to trust.

Judge Raine further found as facts from the credible evidence that there had been no "slapping of backjacks" or shoving of chairs into the wall" in the environment in which Boone was being interrogated, that Sgt. Watkins, in whose hands he had placed himself and who had assured him that no harm would come to him at the hands of the police, was there present to prevent such an environment; that Boone's desire to surrender and to try to exculpate himself was consistent with the testimony of the officers who testified that Boone had been "eager to talk about the case."

In distinguishing the facts in the case from those in *Thiess,* he held that it would impose upon the State a heavier burden than was contemplated by *Escobedo* to hold as a matter of law that a confession was not voluntarily given merely because a turnkey was unable to categorically deny Boone's bald statement that he had requested to use the phone.

The Judge further found from the credible evidence that the statement given by Boone was recorded by Lt. Cadden as recounted and had been read, initialed and signed by him; he pointed out places in the statement where corrections had been made and initialed that could only have been made if Boone had read it.

From the "totality of the circumstances" the trial court concluded that Boone had been advised of his right to remain silent, that he was willing to talk voluntarily and quickly, that

there was no prolonged interrogation and that there was no evidence of coercion to overcome his will to remain silent. The Appellant's statement was admitted into evidence.

### (1) *Admissibility of Statement*

Appellant's arrest was lawful. The officers knew that an armed robbery and homicide had been perpetrated. After Goode had given his statement to Lt. Callahan, he had probable cause to believe that Boone was Goode's confederate. Information thus received from a co-defendant can afford a basis for "probable cause" to believe that the person so named was a confederate in the perpetration of the crime. *Mefford & Blackburn v. State,* 235 Md. 497, 511, 201 A. 2d 824 (1964), cert. denied 380 U. S. 937.

Assuming *arguendo* that Appellant had been illegally arrested, that fact alone would not render inadmissible a statement which was otherwise shown to have been freely and voluntarily given. *Prescoe v. State,* 231 Md. 486, 191 A. 2d 226 (1963); *Stewart v. State,* 232 Md. 318, 193 A. 2d 40 (1963); *Peal v. State,* 232 Md. 329, 193 A. 2d 53 (1963); *Dailey v. State,* 234 Md. 325, 199 A. 2d 211 (1964); *Mefford & Blackburn v. State, supra; McChan v. State,* 238 Md. 149, 207 A. 2d 632 (1965); *Taylor v. State,* 238 Md. 424, 209 A. 2d 595 (1965); and *Dailey v. State,* 239 Md. 596, 212 A. 2d 257 (1965), cert. denied 384 U. S. 913.

Since Appellant's trial had been concluded prior to June 13, 1966, the standards enunciated on that date by the United States Supreme Court in *Miranda v. Arizona,* 384 U. S. 436, 16 L. Ed. 2d 694, are here inapplicable. See *Johnson & Cassidy v. New Jersey,* 384 U. S. 719, 86 S. Ct. 1772, 34 L. W. 4593 (1966); *Westfall v. State,* 243 Md. 413, 221 A. 2d 646 (1966); *Johnson v. Warden,* 244 Md. 384, 223 A. 2d 584 (1966); *Campbell v. State,* 244 Md. 363, 223 A. 2d 604 (1966); *Crumb v. State,* 1 Md. App. 98, 227 A. 2d 369 (1967); *Cooper v. State,* 1 Md. App. 190, 228 A. 2d 840 (1967).

In *Jenkins v. State,* 238 Md. 451, 209 A. 2d 616 (1964), the Court stated, at p. 460: "* * * we read *Escobedo v. Illinois,* 378 U. S. 478, 491, 12 L. Ed. 2d 977, to hold no more than that where the suspect '* * * *has requested and been denied*

an opportunity to consult with his lawyer, *and* the police have not effectively warned him of his absolute constitutional right to remain silent * * *' the accused has been denied assistance of counsel and his statement made without the advice of counsel is inadmissible against him at his trial. * * *" (Italics supplied)

See also *Harriday v. State,* 238 Md. 75, 79, 207 A. 2d 629, where the court said, "We do not think *Escobedo* controlling, since the appellant did not ask for counsel either before or during the making of his confession."

In *Crowe & Williston v. State,* 240 Md. 144, 213 A. 2d 558 (1965) the Court of Appeals said, at pg. 150:

> "* * * This Court has repeatedly held that where there is no evidence that a request for a lawyer is made, the landmark case of *Escobedo v. Illinois,* 378 U. S. 478, 12 L. Ed. 2d 977, does not control, and if the confession is voluntary it may be admitted into evidence. *Johnson v. State,* 238 Md. 140, 207 A. 2d 643; *Swartz v. State,* 237 Md. 263, 265, 205 A. 2d 803; *Anderson v. State,* 237 Md. 45, 205 A. 2d 281; *Mefford & Blackburn v. State, supra; Green v. State,* 236 Md. 334, 203 A. 2d 870."

See also *Ferrell v. Warden,* 241 Md. 432, 216 A. 2d 740 (1965).

For the holdings in *Escobedo* to be applicable to this case it was necessary for the trial judge to be persuaded from the credible evidence that Boone had in fact made a request to contact a lawyer and had been denied and that the police had not effectively warned him of his right to remain silent. Judge Raine found to the contrary. See *Mefford & Blackburn v. State, supra.*

In *Edwards v. State,* 194 Md. 387, 71 A. 2d 487 (1949), the Court of Appeals said at p. 393:

> "* * * Where an attempt is made to offer a confession in evidence, and the accused says that the confession made by him was not obtained voluntarily, but because of some threats or persuasions, it is then the

duty of the trial court to determine whether the testimony of the accused or the testimony of the officers who testified that no such threats or persuasions were made, is to be given the greater weight. This determination depends upon whether the State has met the burden of proof of establishing that the confession was freely and voluntarily made. We agree that the trial court in view of the denials by the officers, was justified in holding that the confession was not obtained because of threats made by the officers. * * *"

In *Grammer v. State,* 203 Md. 200, 100 A. 2d 257 (1953), the Court of Appeals held, at pgs. 218-19:

"* * * Where there is conflicting testimony as to whether a confession was voluntary, the conflict must be resolved by the trial court and its determination is not reviewable on appeal unless there was a manifest abuse of discretion. *Linkins v. State, supra; White v. State,* 201 Md. 489, 492-493, 94 A. 2d 447, 449; *Edwards v. State,* 194 Md. 387. In almost every serious criminal case, when a confession is offered in evidence, its rejection is sought. The accused is almost always ready to say that his incriminating statement was not obtained voluntarily but by some form of persuasion or coercion. The trial judge, who has the opportunity to see and hear the witnesses on the stand, must then determine where the truth lies. Unless there has been plain error in his decision, we will not disturb his findings. *Peters and Demby v. State,* 187 Md. 7; and *Jones v. State,* 188 Md. 263, 270-271."

Because the Appellant testified that he had made requests for a lawyer and that the police had created an atmosphere of hostility—in slapping blackjacks and slamming chairs—this did not necessarily make these facts so. The trial judge was not required to believe his testimony and the credibility of all the witnesses on the issue of admissibility of the statement was primarily for his determination. *Tate v. State,* 236 Md. 312, 203 A. 2d 882 (1964).

In *Crowe & Williston v. State, supra,* the Court said at p. 149:

"We find no merit in Williston's first contention that the confession was a product of coercion and was thus inadmissible against him. The trial judge heard. the testimony of Williston, Sergeant Holland, and of the other officers who testified, as to the voluntariness of the statement. He was in the best position to judge the credibility of the witnesses. * * * On numerous occasions this Court has held that where the trial judge sits without a jury, his determination as to whether a statement is freely and voluntarily given will not be disturbed on appeal in the absence of a showing of abuse of discretion. *Oakley, Etc. v. State,* 238 Md. 48, 207 A. 2d 472; *Abbott v. State,* 231 Md. 462, 190 A. 2d 797; *Bryant v. State,* 229 Md. 531, 185 A. 2d 190. Cf. Md. Rule 886 a. We find no such abuse of discretion in the instant case. The court was clearly justified in its determination that the State had met its burden of proof as to the voluntariness of the statement by introducing 'believable, persuasive contradiction' of each claim of threat or coercion. *Mefford and Blackburn v. State,* 235 Md. 497, 201 A. 2d 824; *Oakley, Etc. v. State, supra.*"

Judge Raine saw and heard the witnesses who testified before him in connection with the admissibility of the statement; the credibility of the conflicting evidence was a matter for him to decide. *Ralph v. State,* 226 Md. 480, 487, 174 A. 2d 163 (1961); *Jones v. State,* 229 Md. 165, 174, 182 A. 2d 784 (1962).

Where the trial judge believes that a confession was freely and voluntarily made, his finding will not be disturbed on appeal unless there was a clear abuse of discretion. *Abbott v. State,* 231 Md. 462, 190 A. 2d 797 (1963); *McChan v. State, supra,* at 159.

We agree that the trial court, in view of the testimony of the officers, was justified upon what he found to be the credible, persuasive evidence in holding that the statement was not ob-

tained because of any implied threats made by the officers nor was it obtained after Appellant requested and was denied counsel, and was given after he had been advised of his right to remain silent. There was no error in the ruling by the trial court that the prosecution had sustained the burden of proving that the Appellant's statement was freely and voluntarily given and in admitting it into evidence. *Bryant v. State,* 229 Md. 531, 536, 185 A. 2d 190 (1962) ; *Mundell v. State,* 244 Md. 91, 93, 223 A. 2d 184 (1966).

### (2) *Request to Summons Witnesses*

When Appellant stated to the court that he wanted to interrogate the police officers who had taken Goode to the hospital and wanted to question Goode pertaining to the information he had given the police, he knew Goode was not then available in court. The State opposed any continuance to permit the summoning of such witnesses, pointing out that its entire file had been opened to defense counsel. The trial court refused the continuance, noting that the Appellant had not issued summonses for any such witnesses.

In *Jackson v. State,* 214 Md. 454, 135 A. 2d 638 (1957) the Court of Appeals held at p. 459:

"* * * ordinarily matters of continuance are within the sound discretion of the trial judges; and their rulings thereon should not be disturbed, unless there be a showing that there was an abuse of this discretion, which was prejudicial to the party requesting the continuance. To show such an abuse of discretion and prejudice for failure to continue a case because of the absence of witnesses, the party requesting the continuance should show: that he had a reasonable expectation of securing the evidence of the absent witness or witnesses within some reasonable time; that the evidence was competent and material; and he believed that the case could not be fairly tried without it; and that he had made diligent and proper efforts to secure the evidence. *Harris v. State,* 141 Md. 526, 530, 119 A. 154; *Laque v. State,* 207 Md. 242, 254, 255, 113 A. 2d 893. Cf. *Plank v. Summers,* 205 Md. 598, 109 A. 2d 914. * * *"

In *McKenzie v. State,* 236 Md. 597, 204 A. 2d 678 (1964) the Court said at p. 601:

> "We have held repeatedly that the denial of a request for a continuance is within the sound discretion of the trial court. We conclude that under the circumstances there was no abuse of this discretion. * * * As to the claim that he needed time to summon witnesses, even if we disregard the month which had elapsed after arraignment we find no basis for continuance since he did not make any proffer regarding the materiality of their testimony, their names or their availability. See *Mazer v. State,* 231 Md. 40, 46, 188 A. 2d 552 (1963); *Stansbury v. State,* 218 Md. 255, 262, 146 A. 2d 17 (1958); *Jackson v. State,* 214 Md. 454, 135 A. 2d 638 (1957). * * *"

See also *Bryant v. State, supra,* where no effort had been made by the defendant to subpoena the witnesses he requested or to inform the State of his inability to find the absent witness.

Here, Appellant had ample time to prepare for his defense and to direct the issuance of summonses for all those witnesses he intended to produce in connection with his Motion to Suppress. Other than Goode, the witnesses were unnamed, there was no showing that he had made proper efforts to secure their attendance; no proffer was made of the nature of their testimony; nor was there any showing of the competency or relevancy of their testimony to the issue then before the court.

We find that there was no abuse of discretion on the part of the trial judge in denying a continuance for the production of witnesses under the circumstances here shown.

### (3) *Re-Opening of Evidence*

Appellant alleges error when the trial court permitted the prosecution to re-open its case in connection with the admissibility of the statement and in permitting Sgt. Watkins and Officer Huster to then testify.

The burden was upon the State, on the issue of suppression

of the statement, to show that it had been freely and voluntarily given. *Jackson v. State,* 209 Md. 390, 394, 121 A. 2d 242 (1956); *Mercer v. State,* 237 Md. 479, 483, 206 A. 2d 797 (1965); *Oakley and Summerville v. State,* 238 Md. 48, 53, 207 A. 2d 472 (1965), cert. denied 384 U. S. 1021; and *Burks v. State,* 1 Md. App. 81, 84, 227 A. 2d 355 (1967).

Having testified that he had requested permission of the turnkey to telephone an attorney and that Sgt. Watkins had heard his wife tell him that she was going to call an attorney, Appellant undertook, under the holdings in *Thiess v. State, supra,* and *Streams v. State, supra,* to stand technically on the fact that this evidence from him had not been rebutted and refuted and that his statement must thus be suppressed.

The Maryland cases hold that it is within the discretion of the trial court whether a case may be re-opened to permit additional testimony and from its action in granting or rejecting the application no appeal will generally lie. *Brown v. Bendix Aviation Corp.,* 187 Md. 613, 620, 51 A. 2d 292 (1946). Compare *Sanders v. State,* 1 Md. App. 630.

In *East Balto. Transfer Co. v. Goeb,* 140 Md. 534, 118 A. 74 (1922), the case was allowed to be re-opened for the purpose of allowing the plaintiff to prove the identity of the driver of the truck which caused the accident and to prove that the truck belonged to the defendant-appellant. The court, in its opinion, said at p. 537: "The plaintiff had failed to offer in the course of the trial the necessary evidence for a proper consideration of the case, and it was entirely within the discretion of the court to permit the additional testimony to be introduced. The matter was within the sound discretion of the court below, and its action in this respect is not reviewable by this Court and is no ground for an appeal. (cases cited)"

In *Bradford v. Eutaw Savings Bank,* 186 Md. 127, 46 A. 2d 284 (1945), the trial court received testimony on May 24, 1945, and at the close of the evidence indicated there had been no proof sufficient to grant the complainant the relief prayed; the court indicated that it would be desirable to take additional testimony before any action could be taken on the cross-bill filed, and such additional testimony was taken on June 14, 1945, over

the objection of the Appellant. The Court of Appeals, in upholding the action of the lower court, said at p. 131:

"* * * The appellants objected to it below and object here, because they say it should have been taken at the first hearing, as the witnesses were then in court and the appellee closed her case without calling them. However, a chancellor has the power to allow defects in proof to be supplied at any time. *Bailey v. Bailey,* 186 Md. 76, 46 A. 2d 275. Such action is in his discretion and is not subject to review here (*Trustees of German Lutheran, etc. v. Heise,* 44 Md. 453) except where his action is arbitrary, and the rights of some of the parties are improperly affected. When, in the judgment of the chancellor, the ends of justice will be subserved, this court has said that it is his plain duty to allow further proof to come in. *Worthington v. Hiss,* 70 Md. 172, 16 A. 534, 17 A. 1026. We find nothing arbitrary in the action of the chancellor herein in this respect."

Although *Bradford* was an action in equity, and the rule appears to be more liberally applied in such cases, we see no reason why that fact should make the logic of the rule inapplicable here.

We have been cited no authority nor do we know of any holding that such discretion as is vested in the trial court should not be equally applicable to the receipt of evidence on a Motion under Rule 725(d) of the Maryland Rules.

Here, Judge Raine was conducting a pre-trial evidentiary hearing on the Motion to Suppress; it was his function to ascertain from the credible evidence the fundamental facts upon which his ruling would be based. When, in his judgment, it appeared necessary that additional evidence be considered in order that the ends of justice might be subserved, it was within his discretion to allow further proof to come in. There is no showing that his action was arbitrary nor that his discretion was abused. See *Schroder v. State,* 206 Md. 261, 265, 111 A. 2d 587 (1955) and *Willey v. Glass,* 242 Md. 156, 163, 218 A. 2d 212 (1965).

## II

## EXAMINATION OF WITNESSES

Appellant's fourth and fifth contentions, relating as they do to questions directed to witnesses, may similarly be considered together.

### (4) Cross-Examination about Convictions

Although the trial court sustained Appellant's objections to questions directed to him as to prior convictions for crime, when he testified on the Motion to Suppress, the court, over his objection, permitted the prosecution to examine him about any prior convictions when he testified before the jury "on the limited issue of the voluntariness of the statement." He challenges the propriety of such questions and contends that any such inquiry, even if allowable, should have been limited to the bare fact as to whether or not he had been previously convicted of crime and an inquiry as to the nature of his convictions should not have been permitted.

After the statement had been ruled admissible in the pretrial hearing, the prosecution, in the presentation of its case before the jury, elicited from Lt. Cadden and Sgt. Watkins substantially the same evidence on the voluntariness of the statement as they theretofore had given on the Motion. The turnkey's earlier testimony was, by stipulation, read to the jury. The Appellant was then granted leave to testify before the jury on the limited issue of the voluntariness of his statement;[1] he, his

---

1. Generally a defendant is not permitted to fragmentize his defense so as to elect to undertake to answer or rebut in the presence of the jury only certain elements of the prosecution's case. The rule involving incriminating statements seems, however, to be an exception. Although the correctness of the procedure in allowing Appellant to become a witness "on the limited issue of the voluntariness of his statement" is not before us, such a procedure seems in accord with the rule stated in *Hall v. State,* 223 Md. 158, 169-70, 162 A. 2d 751, 757 (1960) as follows: "(W)e start with the rule that '(b)efore a confession can be admitted in evidence, the State must show, to the satisfaction of the Court, that it was the free and voluntary act of an accused; that no force or coercion was exercised by the officers obtaining the confession to cause the accused to confess; that no hope or promise was held out to an accused for the purpose of inducing him to confess. If, after a consider-

mother, and sister, substantially repeated their earlier testimony and by stipulation, his wife's testimony was read to the jury.

---

ation of both the evidence of the State and the evidence offered by an accused (if any be offered by him) regarding the matter, the court is of the opinion that the evidence shows, *prima facie,* that the confession was freely and voluntarily made, it should be admitted in evidence; and, if not, it should be rejected. The matter, in the first instance, is for the court, and involves a mixed question of law and fact. When admitted in evidence it is *prima facie* proof that the confession was freely and voluntarily made, but *the ultimate fact is for the jury,* and must be considered by it in the light of all the facts and circumstances of the case.' *Smith v. State,* 189 Md. 596, 603-4, 56 A. 2d 818, 821, quoted with approval in *Linkins v. State,* 202 Md. 212, 222-223, 96 A. 2d 246.) And if the court decides to admit the confession, 'the *same evidence is then given to the jury,* as it has the final determination, irrespective of the court's preliminary decision, whether or not a confession is voluntary, and whether it should be believed. In so doing, *the jury is entitled to have before it all of the evidence which affects the voluntary character of the document and which the court passed upon in admitting it."* *Linkins v. State, supra,* 202 Md. at 223, citing and quoting from *Day v. State,* 196 Md. 384, 399, 76 A. 2d 729, 736. See also *Peters and Demby v. State,* 187 Md. 7, 48 A. 2d 586, *Jones v. State,* 188 Md. 263, 52 A. 2d 484, and *McCleary v. State,* 122 Md. 394, 89 A. 1100, all cited in *Linkins;* and *Edwards v. State,* 194 Md. 387, 71 A. 2d 487; *Jackson v. State,* 209 Md. 390, 121 A. 2d 242. If there is a conflict of testimony as to how the confession was obtained that is to be resolved in the first instance by the court and *ultimately by the jury.* See the cases above cited and *Cox v. State,* 192 Md. 525, 536-537, 64 A. 2d 732." (Italics supplied)

The rule was re-stated in *Presley v. State,* 224 Md. 550, 559, 168 A. 2d 510, 515 (1961), cert. denied 368 U. S. 957 and *Parker v. State,* 225 Md. 288, 291, 170 A. 2d 210, 211 (1961).

It appears that the procedure had its origin in *Nicholson v. State,* 38 Md. 140 (1873) where the trial court allowed the Appellant and his witnesses to testify before the jury concerning an alleged inducement in connection with passing upon the preliminary question of admissibility of the confession.

The Court pointed out in *McCleary v. State,* 122 Md. 394, 399, 89 A. 1100 (1914) (a non-jury case) that in some States it was left to the jury to determine as a question of fact whether or not that which was offered as a confession was freely and voluntarily given, but that Maryland had aligned itself with those States that

In this State it has been firmly established that in criminal cases where the defendant is a witness in his own behalf, he thereby puts his character in issue and may be asked on cross-examination if he has been convicted of crime. *Niemoth v. State,* 160 Md. 544, 556, 154 A. 66, 71 (1931); *Burgess v. State,* 161 Md. 162, 169, 155 A. 153 (1931). See also *Linkins v. State,* 202 Md. 212, 96 A. 2d 246 (1953); *Jordan v. State,* 219 Md. 36, 148 A. 2d 292 (1959), cert. denied, 361 U. S. 849; *Taylor v. State,* 226 Md. 561, 174 A. 2d 573 (1961); *Cousins v. State,* 230 Md. 2, 185 A. 2d 488 (1962), *Davis v. Warden, Maryland Penitentiary,* 235 Md. 637, 639, 201 A. 2d 672 (1964), *Davis v. State,* 237 Md. 97, 205 A. 2d 254 (1964), cert. denied 382 U. S. 945; and *Mason v. State,* 242 Md. 707, 218 A. 2d 682 (1966).

In *Davis v. State, supra,* the court said at p. 106: "A defendant in a criminal case who voluntarily takes the witness stand in his own behalf thereby subjects himself to the same rules of cross-examination that govern other witnesses. (cases cited) He may properly be cross-examined as to his prior criminal record. (cases cited)"

Appellant contends that since he became a witness for the limited purpose of the voluntariness of his statement, he was thus immune to impeachment by any cross-examination concerning prior convictions.

---

held that the admissibility of such a statement had to be determined by the court. (See *Jackson v. Denno,* 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), which found that the New York procedure then in effect for determining the voluntariness of a confession was unconstitutional.)

In *Smith v. State,* 189 Md. 596, 604, 56 A. 2d 818 (1948), *supra,* the Court pointed out that the *better* rule and the one supported by authority was that the preliminary investigation made by the court to determine admissibility should be made out of the presence of the jury, but the fact (in that case) that such inquiry took place in the presence of the jury was not prejudicial since the confession had been admitted into evidence and it was for the jury to decide what weight was to be given to it.

It appears that so much of the rule as provides for the resubmission before the jury of the same evidence as that which the court heard in passing upon the admissibility of the statement originated in *Day v. State,* 196 Md. 384, 399, 76 A. 2d 729 (1950) *supra.*

He acknowledged convictions in 1950 for burglary, in 1957 for larceny, in 1959 for robbery and in 1964 for assault. The trial court then and there did advise the jury that they were to decide the case on the facts and evidence of it and not upon the fact that the defendant may have been previously convicted; that such evidence was not substantive but was admissible solely on the issue of credibility.

In *Stein v. New York*, 346 U. S. 156, 73 S. Ct. 1077, 97 L. Ed. 1522 (1953), Appellants attacked the New York procedure under which if a fair question of fact was presented on the issue of voluntariness, the trial court was required to admit the confession and leave to the jury, under proper instructions, the ultimate determination of its voluntariness and also its truthfulness.

Appellants further charged that under the procedure in effect they could not take the witness stand to support, with their own oaths, the charges their counsel made against the police concerning coercion. New York law permitted such witnesses to be subjected to a *general* cross-examination. The Supreme Court held that the procedure was not violative of the Fourteenth Amendment.

Although *Stein* and the procedure approved therein was overruled in *Jackson v. Denno*, 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), there still remains from *Stein* (pgs. 175-6) the *dictum*:

> "Petitioners' attack is so unbounded and unqualified that it could prevail only if the Fourteenth Amendment were construed to allow them to testify to their coercion by the police, shielded from any cross-examination whatever. If they had given such testimony, it would have been in direct conflict with that of the police, and the decision would depend on which was believable. Certainly the Constitution does not prohibit tests of credibility which American law uniformly applies to witnesses.

> \* \* \*

> "And if they became witnesses, does the Constitution compel the State to forego attack on their credibility by showing former convictions? We now know that

each had an impressive felony record, one including murder and another perjury  Doubtless, to have testified would have resulted in disclosing this to the jury, while silence would keep it from being brought to light until after the verdict. We think, on any realistic view of this case, they stayed off the stand not because the State would subject them to any improper cross-examination but because their records made them vulnerable to any proper one."

See also language of similar import in *Adamson v. California,* 332 U. S. 46, 57, 67 S. Ct. 1672, 91 L. Ed. 1903 (1947) and *Raffel v. U. S.,* 271 U. S. 494, 497, 46 S. Ct. 566, 70 L. Ed. 1054 (1926).

In *People v. Huntley,* 259 N. Y. S. 2d 369 (1965), a post-*Jackson v. Denno* case, the court held that on the issue of voluntariness of a confession, cross-examination of the defendant should be permitted as to matters affecting his credibility—including prior convictions—but that cross-examination on matters of guilt or the truthfulness of a confession should not be permitted on the voluntariness issue. The court said in its opinion at p. 371:

"* * * It would appear that the reasonable rule in a *Jackson-Denno* hearing should be to permit cross-examination within the proper discretionary range of the general rule as to matters affecting credibility, keeping in mind, however, that determination of voluntariness must be based upon a finding of persuasive relevant factors, whether in addition to or apart from the matter of credibility as affected by defendant's criminal record. The court has considered defendant's prior convictions in that light."

In *Jackson v. Denno,* the Supreme Court held that it is a defendant's constitutional right, at some stage in the proceedings, to object to the use of a confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession. (Citing *Rogers v. Richmond,* 365 U. S. 534) Nowhere

in *Jackson* does the Court suggest that in such a hearing on the voluntariness, is the defendant immune from impeachment by cross-examination about prior convictions.

Professor Wigmore, in his work on *Evidence* Vol. 3, Sec. 889 (3rd Ed.) (1940), in discussing the position in which a defendant may find himself as a witness states:

> "* * * The argument for the affirmative is that he is in fact a witness as much as he is in fact a defendant, that as a witness he may or may not be credible, and that the State has an overriding interest in ascertaining this; that, as the defendant has voluntarily chosen to offer his testimony, it is not unfair to require him to submit to the incidental tests of testimony ordinarily applied, and that any other rule would practically give immunity to defendants to offer false testimony to the jury."

Appellant has cited us no case nor has our research disclosed any which would give him such immunity where, under the practice followed here, he takes the witness stand for the purpose of repeating before the jury the same evidence as was submitted to the court on the issue of voluntariness.

Appellant by his testimony undertook, under oath, to persuade the jury—which had the ultimate determination—that his statement had not been voluntarily given. His evidence concerning the circumstances surrounding the giving of the statement was diametrically opposed to that of the police officers who testified. It was for the jury from the evidence it found to be credible to decide between these contradictory versions and the jury was entitled to have before it the benefit of every factor which would assist them in passing on the credibility of the witnesses—including the impeachment of any witness—by examination about prior convictions of crime.

The trial judge was clearly correct in permitting the prosecution to inquire if the Appellant had been so convicted and we see no reason why such an examination would not equally be pertinent and allowable when the Appellant testified on the Motion to Suppress the Statement. See *People v. Huntley, supra.*

In *Cousins v. State, supra,* the court said at pg. 4 :

"It has been held by this Court that evidence of the accused's previous conviction of crime need not be restricted to infamous crimes or those involving moral turpitude, provided the violation of law may have some tendency to show that the person charged is not to be believed under oath. *Taylor v. State,* 226 Md. 561 ; *Linkins v. State,* 202 Md. 212. In such instances the exercise of discretion by the trial judge will not be interfered with on appeal unless the fact of the prior conviction is clearly irrelevant. *Nelson v. Seiler,* 154 Md. 63, 69. * * *"

In *Piles v. State,* 233 Md. 487, 197 A. 2d 238 (1964), the Court of Appeals approved an instruction which advised the jury that :

"* * * '[P]ast convictions of the accused are to be considered in this case only insofar as they affect his credibility (there are exceptions to this rule, not applicable to the case at bar). You are not to convict him upon things that he has done in the past for which he has been tried and paid the penalty, but you are to consider them insofar as they affect his credibility. That is, that a man who has been convicted of a serious crime is more likely to tell an untruth than a man who has never been convicted of a serious crime. So, * * * in weighing the testimony of the defendant, you are to consider his past convictions insofar as they would affect his credibility in this case.' "

Since the Appellant was subject to impeachment by examination about prior convictions it necessarily follows that in passing upon his credibility the jury was entitled to consider whether or not his convictions for the crimes of burglary, larceny, robbery, and assault impugned his veracity.

Although Judge Raine's instructions to the jury did not quite go as far as the instruction approved in *Piles,* he advised the jury upon the receipt of such evidence that it was only admissible on the issue of credibility. See *Kirkorian v. State,* 233 Md. 324, 328, 196 A. 2d 866 (1964), cert. denied 377 U. S. 945.

## (5) Leading Questions

Appellant contends that the trial court erroneously overruled his objections when Sgt. Watkins was allowed to answer the question: "He never made any request for a phone call then, did he?" and when Officer Marchbanks was allowed to testify in response to the question: "Did he say at this time what either of these men were wearing?" on the grounds that both questions were leading.

A leading question generally is a question which suggests to the witness the specific answer desired or a question admitting of being answered by a simple "yes" or "no." See 3 Wigmore, *Evidence,* Secs. 769 and 772.

In *Wolf v. State,* 143 Md. 489, 122 A. 641 (1923), the witness was asked: "Now, what was said, if anything, by anybody, about having nerve or not having nerve?"

The Court of Appeals, in its opinion, in rejecting the contention that this was improper as a "leading question" said at p. 499:

> "A leading question is one which embodies a material fact and admits of a simple affirmative or negative answer. *Lee v. Tinges,* 7 Md. 234; *Walker v. Baldwin,* 106 Md. 663; *B. & O. R. R. Co. v. Black,* 107 Md. 653. The question objected to is not within that description. It does not admit of an answer in either an affirmative or a negative form. The purpose of the inquiry was to ascertain what, if anything, was said on the subject to which it directed attention. This was a permissible method of developing the testimony."

The transcript shows that the question addressed to Sgt. Watkins took place on his re-direct examination, out of the presence of the jury on the Motion to Suppress, after he had previously testified unequivocally, on direct examination, that the Appellant had never made any requests of him to make a phone call to contact an attorney.

In *MacDonald v. State,* 227 Md. 391, 177 A. 2d 266 (1962), a case very similar to the issue here, the Court of Appeals said at p. 392:

"* * * In the first place, the question objected to, as to who was present when the appellant struck Hutchins, followed positive testimony by the witness that he saw the appellant strike Hutchins, which had come in without objection. The question objected to was not designed to supply an answer to the question propounded and hence, was not leading. *Harward v. Harward,* 173 Md. 339, 350. * * *"

Although the question addressed to Sgt. Watkins appears to have been leading, it was addressed to the witness as a synopsis or repetition of his prior direct testimony. In addition, the question was asked, out of the presence of the jury, in connection with the Motion and from the standpoint of the trial judge, was a redundancy. The ruling did not constitute error. See *Realty Co. v. Sales Corp.,* 163 Md. 541, 551, 163 A. 841 (1933); *Shriver v. Caples,* 150 Md. 571, 574, 133 A. 470 (1926); *State Roads Com. v. Bare,* 220 Md. 91, 94, 151 A. 2d 154 (1959); and *Walsh v. Edwards,* 233 Md. 552, 558, 197 A. 2d 424 (1964).

When the question was addressed to Officer Marchbanks, he was testifying concerning the *res gestae* (*Stevens v. State,* 232 Md. 33, 40, 192 A. 2d 73 (1963), cert. denied 375 U. S. 886). The question followed immediately his testimony that the decedent had been found suffering from a gunshot wound and had related to the Officer that he had been held-up by two colored males who had respectively ordered coffee and vodka; that both subjects had produced guns and that after being told to lay on the floor he had been shot by one of the men who was going through the cash register.

The witness's attention, by the question, was obviously being directed to the subject-matter of the wearing apparel of the robbers and was not a leading question. Even if it were, there is a broad discretion vested in the trial courts concerning such questions. *Wolf v. State, supra; Bethlehem Steel Co. v. Golombieski,* 231 Md. 124, 188 A. 2d 923 (1963), and *Walsh v. Edwards, supra.* There was no error in overruling Appellant's objection to that question.

## III

## SUFFICIENCY OF EVIDENCE

Appellant's sixth contention challenges the sufficiency of the evidence to sustain his conviction. He cites *Tasco v. State,* 223 Md. 503, 165 A. 2d 456 (1960), cert. denied 365 U. S. 885, as well as *Watson v. State,* 208 Md. 210, 117 A. 2d 549 (1955).

His Motion for Judgment of Acquittal, renewed at the close of all the evidence was granted on the third, fourth, fifth, sixth and seventh counts and denied on the first and second counts of the Indictment which charged robbery with a deadly weapon, etc. This preserved for him our review of this contention. *Lotharp v. State,* 231 Md. 239, 240, 189 A. 2d 652 (1963); and *Tull v. State,* 230 Md. 152, 155, 186 A. 2d 205 (1962).

In order to overturn a judgment entered on the verdict of a jury for insufficiency of the evidence, it is necessary to show that there was no legally sufficient evidence, or inferences drawable therefrom, on which the jury could find the defendant guilty beyond a reasonable doubt. *Royal v. State,* 236 Md. 443, 204 A. 2d 500 (1964); and *Coates v. State,* 232 Md. 72, 191 A. 2d 579 (1963). See also *Graef v. State,* 1 Md. App. 161, 165 (1967).

The *res gestae* evidence offered through Officer Marchbanks established that two colored males had entered the Tavern, had ordered respectively coffee and vodka; that both had produced guns, that one went behind the bar, directed Hazard to lay on the floor and "started going through the cash register;" that he had been shot while lying on the floor after he stated that the money was in the bottom drawer; that both men ran from the bar, one described as wearing a green jacket and the other described as wearing dark clothing.

A thirteen year old newsboy, wearing a face mask because of cold weather and delivering the morning paper to the Tavern, looked in the door and saw two men, one wearing a green jacket, upon the premises. He pointed out on a photograph offered in evidence the position in which he had seen the robber wearing the green jacket. He observed the two men run from the Tavern around the corner with bags in their hands and saw them "put something in or take something out" of the trunk of the car in which they took flight on Booth Street.

James C. Burman, husband of the licensee and cousin of the decedent, testified that the premises had closed at about 11:00 p.m., New Year's Day, that Hazard, the only morning employee, regularly opened at 6:00 a.m. and that it was the custom on closing to clear the cash register and leave a sum of money in the register for the next day's operations; that when he went to the premises, in response to a call from the police, the cash register was open and approximately $23.00 in bills were missing.

Appellant's statement set forth that on the previous evening he and "Tomboy" Goode had conspired to rob some narcotics "pushers," had attempted to rob one such victim on Smithson Street, but the plan failed when Goode approached the wrong intended victim. He was present when Goode's girl friend had delivered his pistol to him; that early on the morning of January 2nd, Boone had suggested that they hold-up "Little Melvin" a reputed "pusher" who regularly carried a lot of money with him and they had laid in wait for "Little Melvin" at his home but he failed to appear. He admitted entering Burman's Tavern with Goode, admitted that coffee and vodka had been ordered and corroborated the testimony of the newsboy concerning the incident at the Tavern door. Although he admitted he had had a gun, he contended that he was unarmed while in the Tavern and had left his gun in the car. He attempted to exculpate himself as a perpetrator of the robbery by stating that he ran out the door as soon as he saw Goode go behind the bar and heard the cash register ring. Although he contended he did not hear the shot until he reached the sidewalk, he stated that he and Goode ran side by side to the car and he placed paper over the rear license tag prior to speeding from the scene; that he removed the paper covering the license tag after traveling a safe distance, disembarked and by a cab took refuge at the home of another co-defendant's girlfriend. It was further stated that Goode had given him $2.00 for "carfare" after the robbery and he acknowledged wearing the same olive-drab jacket as he wore while being interrogated.

A confession offered in evidence is not conclusive, but can be disproved by other evidence; and where a statement of a defendant is admitted into evidence, the jury must consider it

in the light of all the surrounding circumstances and in connection with the other evidence offered in the case. *Thomas v. State,* 186 Md. 446, 451, 47 A. 2d 43, 167 A. L. R. 390 (1946) and *Jones v. State,* 188 Md. 263, 267, 52 A. 2d 484 (1947).

In *Tasco v. State, supra,* the court said at p. 509:

"Of course, it is elementary that the *mere presence* of a person at the scene of a crime is not, *of itself,* sufficient to establish that that person was either a principal or an accessory to the crime. *Watson v. State,* 208 Md. 210, 117 A. 2d 549; *Judy v. State,* 218 Md. 168, 146 A. 2d 29. But presence at the immediate and exact spot where a crime is in the process of being committed is a very important factor to be considered in determining guilt; and in this case the trial court was not required to believe that the appellants were mere observers of a crime that was being committed, nor that it is a case where a crime had been committed one hour, one day or one week before, and the defendants happened, by chance, to come to the place where the crime had been committed. * * *" (Italics supplied)

*Watson v. State, supra,* also relied upon by Appellant, is authority for the holding that the mere fact that a person witnesses the crime and makes no objection to its commission and does not notify the police, does not make him an accomplice.

Although the Appellant in his statement undertook to exculpate himself from being an actual perpetrator of the armed robbery, there is no doubt he did unequivocally incriminate himself as a principal in the second-degree.

In *Shockley v. State,* 218 Md. 491, 148 A. 2d 371 (1959), the court said at p. 497:

"Exculpatory statements by an accused may be disbelieved by the triers of the facts. *Kier v. State,* 216 Md. 513, 519; *Berry v. State,* 202 Md. 62, 66. We noted in *Wild v. State,* 201 Md. 73, 77, that 'knowledge may be inferred from circumstances, even where there is positive denial. *Moore v. State,* 199 Md. 676,

87 A. 2d 577; *Shelton v. State,* 198 Md. 405, 413, 84 A. 2d 76, 80. As we said in *Hayette v. State,* 199 Md. 140, 145, 85 A. 2d 790, 792, "on questions of scienter reason for disbelieving evidence denying scienter may also justify finding scienter." ' See also *Brown v. State,* 200 Md. 211, 215, and *Ferraro v. State,* 200 Md. 274, 278. We noted in *Chisley v. State,* 202 Md. 87, 109, that 'Evidence of the movements and actions of the accused after the killing and before the arrest may be competent evidence.' "

Appellant's contention that he had no knowledge that Goode was to hold-up Hazard overlooks the *res gestae* evidence that both perpetrators of the robbery were armed with pistols. See *Mercer v. State,* 225 Md. 14, 169 A. 2d 398. His contention is further inconsistent with his statement wherein he admitted a conspiracy with Goode to hold-up others prior to the entry into the Tavern.

One who is present when a felony is committed by another and who aids and abets its commission by some degree of assistance or encouragement is a principal in the second-degree and is equally guilty as the one who, by his own hand, committed the felony. See Clark & Marshall, *Law of Crimes* (6th Ed.) (1958) Sec. 8.02 and *Vincent v. State,* 220 Md. 232, 239, 151 A. 2d 898 (1959).

There was legally sufficient evidence and inferences drawable therefrom, to submit to the jury for its determination whether or not the Appellant was either a principal in the first-degree or a principal in the second-degree on the first count of the Indictment (robbery with a deadly weapon) or whether or not (from his own statement) he was a participant under the second count (attempted robbery with a deadly weapon). See *Judy v. State,* 218 Md. 168, 146 A. 2d 29 (1958); *Walls v. State,* 220 Md. 115, 150 A. 2d 926 (1959); *Veney v. State,* 225 Md. 237, 170 A. 2d 171 (1961). (Compare with *Johnson v. State,* 227 Md. 159, 175 A. 2d 580 (1961)).

IV

*VERDICTS*

The jury, having had submitted to it the first and second

counts of the Indictment, returned a general verdict of "guilty" without specification as to the count. Appellant as his seventh contention, alleges that this was "clearly improper" because of the contradictory nature of the counts.

An attempt to commit a crime consists of an intent to commit it, the performance of some act towards its commission and the failure to consummate its commission. *Wiley v. State,* 237 Md. 560, 564, 207 A. 2d 478 (1965); *Franczkowski v. State,* 239 Md. 126, 127, 210 A. 2d 504, 6 A.L.R. 3d 238 (1965).

In Clark & Marshall *Law on Crimes, supra,* Sec. 4.06, it is stated: "To constitute an indictable attempt to commit a crime, there must be: (1) an attempt to commit that particular crime; (2) an act done in pursuance of criminal intent, which falls short of the actual commission of the crime (neither the bare intent, without any act, nor mere preparation, is sufficient); (3) at least apparent ability to commit the intended crime; and (4) the crime must, under some decisions, be legally possible of commission."

A failure to consummate the crime is as much an essential element of an attempt as the intent and the performance of an overt act towards its commission. Evidence that a crime has been committed will not sustain a verdict on an attempt to commit it because the essential element of interception, or prevention of execution is lacking. Consummation of the crime can take the behavior out of the definition of an "attempt." See Clark & Marshall, *Law on Crimes, supra,* Sec. 4.14, citing *People v. Lardner,* 300 Ill. 264, 267, 133 N. E. 375, 19 A.L.R. 721 (1921), where a conviction for an "attempt to commit larceny" was reversed upon facts which showed the consummation of the larceny.

In *Dyson v. Warden, Maryland Penitentiary,* 1 Md. App. 469 (decided June 30, 1967), this Court, concerning merger, said at pgs. 472-3:

"* * * In this State 'the true test of whether one criminal offense has merged into another is held to be not whether the two criminal acts are *successive steps of the same transaction,* but whether one crime necessarily involves the other.' *Chittum v. State,* 1 Md. App. 205 (1967); *Veney v. State,* 227 Md. 608, 613

(1961). Such merger may occur when a lesser offense is a necessary ingredient of another. *Green v. State,* 243 Md. 75 (1966). Applicant's contention is that the attempted robbery with a deadly weapon of one person is merged with the robbery with a deadly weapon of another person. These are separate and distinct crimes and obviously neither offense is a necessary ingredient of the other. * * *" (Italics Supplied)

Since the offenses charged in the first and second counts of the Indictment are not respectively necessary ingredients of one another, there was no merger, but the general verdict on both counts was inconsistent.

In *Bell v. State,* 220 Md. 75, 150 A. 2d 908 (1958), the court had entered a general verdict of guilty of receiving a stolen automobile and unauthorized use and on another Indictment entered a general verdict of guilty of larceny and receiving a stolen license plate. No objections were made to these general verdicts and no Motion in Arrest of Judgment was filed.

The Court of Appeals, in its opinion, concerning the inconsistency of the verdicts, said at pgs. 80-1 :

"* * * We also observe that in *Heinze v. State,* 184 Md. 613, 42 A. 2d 128 (1945), we recognized that a general verdict of guilty on two inconsistent counts, such as larceny and receiving, is defective. This is so because a defendant cannot be both a thief and a receiver when it is apparent that the property alleged to have been stolen is the same as that alleged to have been received. When a verdict of guilty is rendered on inconsistent counts, the defendant has a right to require the trier of facts to specify on which of the counts he is guilty, but it is a right which may be waived. Since the question was not raised below in any manner, it may be that the defendant waived the inconsistency. In any event, the court passed but one sentence of a year's duration and then provided that it should run concurrently with the previous sentence of three years for the receiving and unauthorized use of the automo-

bile referred to in the first indictment. Since it does not appear that the defendant has been prejudiced (*Heinze v. State, supra*) by the rendition of inconsistent verdicts under the second indictment, we see no reason to make such inconsistency the basis for a remand of the case for further proceedings or a new trial. *Novak v. State,* 139 Md. 538, 115 A. 853 (1921). * * *"

Similarly, in *Hardesty v. State,* 223 Md. 559, 165 A. 2d 761 (1960), the trial court had entered a general verdict of guilty on an Indictment which contained a number of inconsistent counts. The Court of Appeals, in its opinion, said at p. 562:

"There can be little doubt that the proper practice calls for a specific verdict upon each count of an indictment that contains inconsistent counts, unless a general verdict of 'not guilty' be rendered. In fact, the State rightly concedes that a general verdict of 'guilty' upon such an indictment is defective, and the defendant may require the trier of facts—in this case, the trial judge—to specify on which counts the defendant has been found guilty. However, the State contends that this is a right that may be, and in this case has been, waived, since the question was not raised in the trial court. We passed directly on the question in a recent case, and sustained the position taken by the State. *Bell v. State,* 220 Md. 75, 150 A. 2d 908. See also *Novak v. State,* 139 Md. 538, 541-542, 115 A. 853, and compare *Heinze v. State,* 184 Md. 613. 42 A. 2d 128. In the instant case, the trial judge imposed but one sentence, which is below the maximum permitted by any one of the four counts now under consideration; hence no prejudice resulted to the defendant by reason of the general verdict. *Novak v. State; Bell v. State,* both *supra.*"

Compare, however, *Fabian v. State,* 235 Md. 306, 201 A. 2d 511 (1963) where the Court found that convictions under the fourth and sixth counts of one of the Indictments was in-

consistent, and although no sentence has been imposed under the fourth count (it was considered tantamount to a suspension of sentence on that count) the Court reversed the conviction on the fourth count.

The Appellant made no Motion in the trial court for any correction of the verdict nor was any Motion in Arrest of Judgment filed by him. In *Brill v. State,* 144 Md. 68, 74, 124 A. 414 (1923), it was held that the form of verdict in a jury trial cannot be considered on appeal if it was not questioned in the lower court by a Motion in Arrest of Judgment or some other method.

Although we feel the better practice, under the holdings in *Heinze v. State,* 184 Md. 613, 617-19, 42 A. 2d 128 (1945), would have been for the trial judge to direct the jury to return to the jury room to correct what was patently an inconsistency in the verdict announced by them, in the absence of a Motion in Arrest of Judgment or a request for a correction of the record, this contention is not properly before us. Here, as in *Bell,* only one sentence was imposed which was within the penalty prescribed by Art. 27, Sec. 488, *supra,* for *either* of the offenses; there was no prejudice to the Appellant.

V

### ADDITIONAL "QUESTIONS PRESENTED"

Appellant in his Brief, under "Questions Presented" sets forth an additional *seven* contentions: (8) that the Maryland laws requiring all candidates for public offices, the police, the judiciary and the jury to take a religious test, affidavit or oath are unconstitutional; (9) that he was denied due process of law and equal protection thereof when, after having been held for ten months on an indictment ruled unconstitutional, he was required to wait an additional three months for trial on commitment papers which were equally as unconstitutional, since the Magistrate who signed them, as well as the police who acquired the information presented at the preliminary hearing, took the same unconstitutional oath of office; (10) that during that same period of time he was detained "without having a single guarantee of the Due Process Clause of the Fourteenth Amendment of the Constitution"; (11) that he was subjected to double

jeopardy, having been indicted previously by an illegally constituted Grand Jury; that he was further denied due process of law and equal protection thereof, (12) when he was re-indicted "in an *ex post facto* manner"; and (13) when he was held in City Jail for more than ninety days without charges, arraignment or legal commitment papers "so that the State could reconstruct its laws to correct an illegal and vital error made in its oath of office"; and (14) that he cannot be convicted of armed robbery since the actual perpetrator of both the murder and the robbery (apparently Goode) was allowed to plead guilty to second-degree murder and thereby evade prosecution for armed robbery.

None of these contentions were supported by any written arguments in the Brief by either Appellant or his counsel nor were they argued before us. (See Maryland Rule 1031 (c) (4) and *Hyde v. State,* 228 Md. 209, 218, 179 A. 2d 421 (1962)).

By way of supplement to his Brief, Appellant, in proper person, in a pleading filed directly with the Court, undertook to brief and to raise *two* more contentions: (15) that he was denied due process of law and equal protection thereof, guaranteed by the Fourteenth Amendment in conjunction with the Sixth Amendment, in that the Grand Jury was the product of racial discrimination by a systematic process, proven by population ratio, to exclude negroes, and (16) that the petit jurors were chosen by a similar discriminatory process.

A close scrutiny of the record discloses that, except for an oblique reference in the evidence by a stipulation that Goode had previously pleaded guilty "to the charges for which Boone was being tried," the only one of these points which was directly presented and passed upon by the trial court was the contention "that he was subjected to double jeopardy." This was decided adversely in his Motion to Dismiss the indictment.

When the Appellant (as pointed out above) elected under the holdings in *Smith v. State, supra,* as a result of *Schowgurow,* to have the untried indictments then pending against him declared invalid, he was not thereby placed in double jeopardy. See *Tate v. State,* 236 Md. 312, 316, 203 A. 2d 882 (1964) where the Court said:

"It has been held repeatedly in this State that when a traverser has been tried on an indictment or information that is invalid, he is not in jeopardy and he may be indicted and tried again. *State ex rel. Shatzer v. Warden,* 192 Md. 728, 64 A. 2d 711; *Kenny v. State,* 121 Md. 120, 87 A. 1109; *Stearns v. State,* 81 Md. 341, 32 A. 282."

See also *Sadler v. State,* 1 Md. App. 383, 230 A. 2d 372 (1967), *Benton v. State,* 1 Md. App. 647, 232 A. 2d 541, as well as *U. S. v. Ewell & Dennis,* 383 U. S. 116, 86 S. Ct. 773, 34 L. W. 4154 (1966), and *U. S. v. Tateo,* 377 U. S. 463, 84 S. Ct. 1587, 12 L. Ed. 2d 448 (1964).

Assuming, *arguendo,* that his contention that he is not amenable to conviction because Goode by his plea evaded prosecution for armed robbery, was even indirectly raised and decided in the lower court, this is of no avail to Appellant. The mere statement of the contention reveals its unsubstantiality. See *Washington v. Warden,* 243 Md. 316, 320, 220 A. 2d 607 (1966).

Since his seven remaining contentions were not raised, tried or decided by the lower court, they are not properly here before us for decision. Maryland Rule 1085, *Kares v. State,* 215 Md. 396, 398, 137 A. 2d 712 (1958); *Young v. State,* 220 Md. 95, 99, 151 A. 2d 140 (1959); *Iozzi v. State,* 224 Md. 42, 46, 166 A. 2d 257 (1960); *Hewitt v. State,* 242 Md. 111, 113-14, 218 A. 2d 19 (1966).

See also our decisions in *Whitmer v. State,* 1 Md. App. 127, 132, 227 A. 2d 761 (1967); *Crum and Dunbar v. State,* 1 Md. App. 132, 134, 227 A. 2d 766 (1967); *Dortch and Garnett v. State,* 1 Md. App. 173, 178, 229 A. 2d 148; and *Smith v. State,* 1 Md. App. 297, 301, 229 A. 2d 723.

*Judgment affirmed.*