# LARRY KENNETH BROWN *v.* STATE OF MARYLAND

[No. 139, September Term, 1969.]

*Decided November 25, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Joseph E. Emerson* for appellant.

*T. Joseph Touhey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Julian B. Stevens, State's Attorney for Anne Arundel County,* and *Vincent A. Mulieri, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

It has been long established in Maryland that, absent a satisfactory non-culpable explanation, exclusive possession of recently stolen goods permits an inference of fact that the possession is a guilty possession. *Anglin v. State,* 244 Md. 652, 656.[1] The term "recent" when used in connection with recently stolen goods is a relative term and its meaning as applied to a given case will vary with the circumstances of the case. *Butz v. State,* 221 Md. 68, 77; *Anglin v. State,* 1 Md. App. 85, 92. The term "exclusive" is also a relative one and its meaning as applied to a given case will vary with the circumstances of the case. We discussed fully the meaning of "exclusive" in this context in *Boswell and Poe v. State,* 5 Md. App. 571, 576-

---

1. "The reasonableness and legality of permitting an inference of fact that exclusive recent and unaccounted for possession is a guilty possession is explained by the rule that there may be drawn an inference of one fact from proof of another or others if there is some rational connection between the fact or facts proved and the ultimate fact inferred so that the inference drawn from the proof is not so far-fetched as to be arbitrary.

It is not unreasonable to require the possessor to cause the facts of his possession to be explained if he desires to overcome the *prima facie* case against him arising from the permissible inference of fact flowing from his possession, because the facts as to that possession are peculiarly within his knowledge and ordinarily are not known or available to the State." *Anglin v. State,* 244 Md. 652, 656-657.

579. We said that it is in the sense of a personal posses-
sion and an assertion of property, express or implied by
the exercise of dominion and right of disposal, that the
possession is exclusive. So the possession of stolen prop-
erty is exclusive if it shows exclusion of all persons who
are not parties to the crime, although as to accomplices,
the possession of one is the possession of all. Thus the
possession to be exclusive, need not necessarily be in one
person and may be a joint possession of several persons.
See *Davis and Napier v. State,* 7 Md. App. 667.

The fact inferred from such guilty possession by the
accused fixes his identity as the offender—that he was
the criminal agent. Proof of the *corpus delicti* of the
crime may establish the offense he committed. Thus
where a burglary is proved to have been committed, the
possessor of goods stolen therein may be found to be the
burglar, *Anglin v. State,* 1 Md. App. 85; where a store-
house breaking is proved the possessor of goods taken
therefrom may be found to be the one who broke the
storehouse, *Jones v. State,* 5 Md. App. 180; where a lar-
ceny is proved the possessor of goods stolen may be found
to be the thief, *Frey v. State,* 3 Md. App. 38. However,
if there is credible evidence that the possessor of the
goods was not a principal in the burglary or storehouse
breaking or larceny, he may be found to be a receiver of
stolen goods, *Boblits v. State,* 4 Md. App. 534. So, as was
said in *Jordan v. State,* 219 Md. 36, quoting, at 47-48,
Judge Cardoza in *People v. Galbo* (N. Y.), 112 N. E.
1041, 1044:

"Only half of the problem, however, has been
solved when guilty possession fixes the identity
of the offender. There remains the question of
the nature of his offense. Here again the facts
must shape the inference. Is the guilty possessor
the thief, or is he a receiver of stolen goods?
Judges have said that, if nothing more is shown,
we may take him to be the thief. * * * But as
soon as evidence is offered that the theft was

committed by someone else, the inference changes, and he becomes a receiver of stolen goods."

There was evidence adduced in the case before us that a tavern in Annapolis had been broken into and ransacked between the hours of 3:00 P.M., 28 January 1968 and 7:05 A.M. the next day. A television set, $300 in cash, 134 quarts of whiskey and an antique "410 revolver" were stolen. On 2 February a police officer observed a "van truck" in Annapolis. Based on information, the details of which are undisclosed in the record, he pursued the truck and apprehended four persons who had occupied the front seat, Larry Kenneth Brown (the appellant), Marvin Caldwell Cole, Jay Alsop Mullins, and Howard Hull.[2] Who was driving the truck was not shown. In the truck the officers saw and recovered the television set and several cases of whiskey stolen from the tavern. Latent fingerprints lifted from a bottle of scotch moved from the place where the proprietor of the tavern had left it when he secured the premises before the breaking but not removed from the tavern were shown to be those of Mullins. (Fingerprints obtained from the appellant were not sent to the F. B. I. for identification.) There was also evidence that on 10 July 1968 Cole had attempted to sell the stolen revolver to a gun dealer.

Cole testified in his own behalf. He said that on the day he was arrested he saw the truck driven by Hull and that the appellant was a passenger. Hull asked him if he wanted to go along and Cole did so. They drove out West Street, saw Mullins and picked him up. Hull said "the stuff" in the truck was stolen "but I just took

---

2. The record before us shows that on 11 October 1968 the appellant, Mullins, Cole and a Bernard Gross were jointly indicted, juvenile jurisdiction over them having been waived. The appellant, Mullins and Cole were jointly tried and each convicted of storehouse breaking with intent feloniously to steal (1st count) and grand larceny (5th count). The record does not disclose the disposition of the indictment as to Gross and apparently Hull was not indicted or prosecuted.

it for a grain and just laughed at him." He claimed he had purchased the revolver for $35 about three months later in Baltimore at a bus station from "this boy" who told him it was stolen. He claimed it was not in the truck. He denied seeing the television set before he saw it in the truck and claimed he had never been in the tavern from which it had been stolen.

The appellant testified. He said he was 18 years of age and had never been arrested before. He was in the eleventh grade at Annapolis High School and worked in the afternoon at the Annapolis Country Club. He asserted that on the night of Sunday, 28 January 1968 he worked until 7:30 P.M. and arrived home about 8:00 P.M. He remained home until he left for school the next day. On 2 February, the day he was arrested, he went to the Pepsi Cola Company after school to see Mullins who owed him money. They went into town and at some stage of their travels were joined by Cole. They went to the "Amco Transmission place * * * to see about a car that was being worked on." He did not know the owner of the car. They met Hull who said, "Come on let's go" to rent a truck. They went to Steven's Citco Station and rented a truck. "He didn't tell me why until we got out to the place and he said he had to help his cousin or somebody to move some furniture." They went up Ritchie Highway and turned off on an old country road "not too far from Earleigh Heights." They went to an old abandoned house and got out of the truck, Hull saying, "Come on, we are going in." The appellant saw an automobile like the one he owned and went over to look at it. When he next saw Hull he was taking a television set from the house and putting it in the truck. The appellant got back in the truck and saw "the liquor and everything" and asked where the furniture was. Hull said, "I got all what I wanted." They left and went to Buddy's Tavern where Hull "started to talk to some people around about making some sales of liquor." The television was taken into the tavern because "Hull had got a sale for it or something." The appellant claimed he did not help to load the

goods or to sell it and only got out of the truck at the tavern to use the men's room. On the way back to Annapolis they were arrested. It was about 4:30 or 4:45 P.M. He had expected to go to work that afternoon and Hull had told him "he would give me a ride to work after I helped him deliver this furniture."

The appellant's mother testified that on 28 January he was home when she arrived between 8:00 and 8:30 P.M., that he remained home and went to bed about 11:30 P.M.

The appellant was found guilty by the court in the Circuit Court for Anne Arundel County of breaking the storehouse with felonious intent to steal (1st count) and grand larceny of the goods stolen (5th count). A general sentence was imposed. He was committed to the custody and jurisdiction of the Commissioner for Correction for a period of two years, the sentence was suspended and he was "placed on probation under the rule of the Department of Parole and Probation for 2 years." On appeal the two questions presented go to the sufficiency of the evidence. The appellant contends that the evidence was not sufficient to establish his criminal agency as to the crimes of which he was convicted and that, in any event, even if it was sufficient to show his criminal agency of a crime, that crime could only be receiving stolen goods.

It is clear that the *corpus delicti* of storehouse breaking with intent to commit the felony of grand larceny and the *corpus delicti* of grand larceny were proved. It is also clear that the goods found in the truck were the goods stolen in the commission of those crimes. In the circumstances the trial court could properly find that they were "recently" stolen. And, in the circumstances, the court could also properly find that the appellant was one of those in exclusive possession of the recently stolen goods. See *Lawrence and Boyd v. State,* 6 Md. App. 226. Thus the fact of guilty possession by the appellant was inferred, the court not being obliged to believe his explanations. But while the evidence, by reason of this inference, was sufficient to establish a criminal agency of

the appellant, the question is as to the nature of the offense. Or precisely put, was the inference of facts shaped in the case before us that the appellant was the thief, breaking the storehouse with the alleged intent and stealing the goods, or that he was only a receiver of the stolen goods. He could not be both the thief and the receiver. See *Bell v. State,* 220 Md. 75. In our determination of the question we are governed by the clearly erroneous rule, Md. Rule 1086. It is patent from the court's remarks in rendering its verdict that it believed from the evidence that the stolen goods had been placed in the abandoned house, that the truck was rented to obtain the goods from the place where it had been cached, that it had been recovered, that attempts were made to sell it and that all four of those arrested, including the appellant, had participated in these activities. It was a rational inference from these findings that all four had participated in the breaking and stealing. The fingerprints of one of them, Mullins, were found at the scene of the crime under circumstances showing they had been impressed at the time the crime was committed. Another, Cole, had subsequent to his arrest, attempted to sell a revolver stolen in the breaking which had not been found on his person or in the truck. The testimony of the appellant indicated that Hull was at least one of the thieves. We cannot say that the court was clearly wrong in finding that the appellant also participated in the breaking and stealing. His usual activity after school was to go to his job to work. That he met the other three as he claimed, that he accompanied them for the reasons he advanced and that he engaged in the activities, which the court found he did engage in, with reference to the stolen goods on the day of his arrest, in all innocence was, as the court said, "just too much for the court to swallow." We think a rational inference from the evidence, considered with regard to the inference of criminal agency arising from the possession of the stolen goods, was that the appellant participated with his three companions in the breaking and stealing as well as the sub-

sequent attempts to dispose of the stolen goods and was not a receiver of the stolen goods. Thus we cannot say that the court was clearly wrong in its judgment on the evidence. See *Williams v. State,* 5 Md. App. 450.

*Judgments affirmed.*