## THOMAS LIGHTFOOT *v.* STATE OF MARYLAND

[No. 368, September Term, 1974.]

*Decided March 13, 1975.*

The cause was argued before GILBERT, MENCHINE and MOORE, JJ.

Submitted on brief by *H. George Meredith, Jr., Assigned Public Defender,* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City* and

*William Giuffre, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

On January 20, 1972 close to 8:30 p.m., an armed robbery occurred at the Speedy Clean Laundromat located at Gwynn Oak and Liberty Heights Avenues in Baltimore City. The crime was perpetrated by three tall young men, all armed. The net proceeds of their unlawful enterprise came to $90.

Thereafter, the appellant, Thomas Lightfoot, Daniel Lightfoot and Robert Lightfoot (apparently his brothers) were charged in a seven count indictment with (1) robbery with a dangerous and deadly weapon, (2) attempted robbery with a dangerous and deadly weapon, (3) robbery, (4) assault with intent to rob, (5) assault, (6) larceny and (7) receiving. At the time of his arrest and search, appellant was found to have on his person a .25 caliber automatic pistol. He was accordingly the subject of a separate three count indictment charging (1) carrying a concealed weapon, (2) rogue and vagabond and (3) carrying a weapon openly with intent to injure. In a jury trial in the Criminal Court of Baltimore (Sklar, J. presiding), appellant was convicted of attempted robbery with a dangerous and deadly weapon, for which he was sentenced to a term of fifteen years, and of carrying a concealed weapon, for which he received a concurrent term of two years. On this appeal, he assails the sufficiency of the evidence on two specific grounds:

(a) Since the State's evidence established a consummated armed robbery, he could not be convicted of attempted armed robbery; and

(b) the eyewitness identifications of appellant were so inconsistent as to afford insufficient basis for a conviction.[1]

Appellant did not dispute the occurrence of the incident but denied the *corpus delicti* of attempted robbery and his criminal agency, placing reliance upon an alibi defense —

1. This claim would apply, of course, only to the conviction of attempted armed robbery.

150

that he was at the home of one of his other brothers all evening until they all went to a local bar for a "soft drink" and some cigarettes, shortly before he was apprehended there by the police.

The State produced the manager of the laundromat, Beulah .Dorsey, 58; the security officer on the premises, Jimmy Powell, 57; a customer, William Jackson, 17; and Officer James Birch of the K-9 Squad who made the arrest of appellant. From their testimony the jury could have found that the armed trio entered the laundromat, with weapons concealed, and walked toward the telephone in the rear as if they intended to use it. When they just stood there for a relatively long interval, the manager asked what they wanted but received no response. One of the men did thereafter inquire about dry cleaning his coat. Mrs. Dorsey went back into the office and when she later emerged, one of the men approached her and "poked a gun in my stomach and I went to the cash register; I knew what he wanted." She gave him $77 from the register and $13 from her own pocketbook. The two customers, the security guard and the manager were then herded into a bathroom in the rear and admonished to remain there for fifteen minutes.

Over the police radio some distance away, Officer Birch listened to the report of the robbery and some three hours later he observed three subjects in his area, one of whom matched the description of one of the individuals involved in the laundromat holdup. After observing the men enter Lucky Lou's Tavern, Officer Birch requested a detailed description of the suspects as well as additional police assistance. He subsequently entered the tavern and beckoned appellant outside. When appellant responded to the officer's request for identification, Officer Birch noticed a bulge in his pocket. He searched him and found the automatic pistol. Appellant was then placed under arrest.[2] At the trial, he testified that he was carrying the weapon for protection because his life had been threatened.

2. The ultimate fate of appellant's companions in the tavern and his co-defendants, is not disclosed in the record.

Mrs. Dorsey made an in-court identification of appellant as one of the three robbers but not the one who had held a pistol to her person. The customer, William Jackson, a high school senior who was reading a book in the laundromat while waiting for his football uniform to dry, also identified appellant as one of the three gunmen and as the one who "was standing there and told us to keep quiet and no one would get hurt." The security officer, Mr. Powell, generally confirmed the testimony of the other witnesses concerning the *corpus delicti*. He testified that appellant "looked like the fellow that had the gun on Beulah," but also emphasized that, obedient to a command from one of the men to keep his eyes down, he had made no effort to observe the faces of the intruders. Challenged on cross-examination concerning her prior identification of appellant, Beulah Dorsey testified:

"Mister, I will never forget them mens because these mens cost me hospital bills and doctors' bills. My nerves have been bad ever since."

Questioned further, she responded as follows:

"Q. Well you were looking at him (the man holding the gun on her stomach) and no one else, weren't you?
"A. Mister, they stayed there long enough for me to get a look at all three of them."

I

The second contention contained in appellant's brief — which we address first in sequence — is that the eyewitness identification of appellant was factually insufficient to sustain a conviction of attempted armed robbery. Upon our independent review of the record, we deem it clearly established that the witnesses positively identified the appellant as a participant in the robbery. Although there were some inconsistencies in the description of his hair and clothing and whether or not he was wearing glasses, both the manager and the youthful customer clearly identified Lightfoot as the one who stood armed watch over the

customers and the security officer; and, of course, the security officer himself placed the appellant at the scene.

The weight of the evidence and the credibility of the witnesses are for the trier of facts to determine, *Gunther v. State*, 4 Md. App. 181, 241 A. 2d 907 (1968); and the positive identification of a single eyewitness, if believed by the trier of facts, is ample evidence to sustain a conviction. *Montague v. State*, 3 Md. App. 66, 237 A. 2d 816 (1968).

We find that there was abundant evidence from which the jury could have been convinced beyond a reasonable doubt that the crime of armed robbery had been committed and that the appellant was a principal, at least in the second degree. *Williams and McClelland v. State*, 5 Md. App. 450, 247 A. 2d 731 (1968); *Agresti v. State*, 2 Md. App. 278, 234 A. 2d 284 (1967). As Chief Judge Orth stated for the Court in *Agresti*:

> "Principals in the first degree are those who commit the deed as perpetrating actors, either by their own hand or by the hand of an innocent agent. Under common law, persons present, actually or constructively, aiding and abetting the commission of the crime, but not themselves committing it, are principals in the second degree, provided there is a guilty principal in the first degree." p. 280.

Appellant's assignment of error based upon alleged insufficiency of identification must therefore be rejected.

## II

Under appellant's first assignment of error, the narrow question for decision is whether the commission of an armed robbery in which appellant participated as a principal in the first or second degree, precluded his conviction under the second count of the indictment charging attempted armed robbery. It is appellant's position, relying upon the decisions of this Court in *Boone v. State*, 2 Md. App. 80, 233 A. 2d 476 (1967), *Wiggins v. State*, 8 Md. App. 598, 261 A. 2d 503 (1970) and *McDuffie v. State*, 12 Md. App. 264, 278 A. 2d 307 (1971),

that under Maryland law an accused may not be convicted of an attempt when the evidence has established the consummation of the crime. Appellant's reliance upon the cases cited is misplaced. We hold contrary to his position.

Preliminarily, we observe that in Maryland, except as may be otherwise provided by statute, an attempt to commit a crime of any grade, whether common law or statutory, is a common-law misdemeanor. Hochheimer, *Crimes and Criminal Procedure*, § 515. *Fisher v. State*, 1 Md. App. 505, 231 A. 2d 720 (1967). A sentence for a common-law crime for which no penalty is fixed is not invalid unless it constitutes cruel or unusual punishment; and in the case of an attempt to commit an offense the sentence is not necessarily controlled by the statutory penalty for the completed offense. *Tillett v. Warden*, 215 Md. 596, 135 A. 2d 629 (1957). As previously noted, the punishment prescribed by the statute, Md. Code, Art. 27, § 488, is the same for both armed robbery and attempted armed robbery.[3] The question whether a finding of not guilty of armed robbery renders invalid a verdict of guilt of the attempt has not, it will be seen, been answered by *Boone, Wiggins* or *McDuffie* nor, indeed by any other decided case in this Court or the Court of Appeals.

---

3. Maryland Code provisions with respect to attempts include those which define a particular attempt as a statutory crime and those which merely prescribe the punishment for an attempt. Thus, under the Vehicle Laws every person who commits or attempts to commit any act declared in Art. 66½ to be a crime, shall be guilty of the offense. § 16-101. Under the Sabotage Prevention Law, any person attempting to commit the crimes defined is guilty of a felony and upon conviction is liable to one-half the punishment prescribed for the completed offense. Code, Art. 27, § 538. The penalty for willfully and maliciously attempting to set fire to a building is a sentence of not more than two years or a fine not to exceed $1000. Code, Art. 27, § 10. Again, the Code prescribes, as punishment for an attempt to poison, confinement in the penitentiary for not less than two years nor more than ten years. Art. 27, § 450. Under the Controlled Dangerous Substance law, any person who attempts to commit any offense defined therein may be punished by imprisonment or fine, or both, up to the maximum punishment prescribed for the offense itself. Art. 27, § 290. The punishment for attempting to rob with a dangerous and deadly weapon is the same as for robbery with a deadly weapon, namely: restitution and imprisonment for not more than twenty years. Art. 27, § 488. Murder which occurs in the perpetration of or an attempt to perpetrate rape, sodomy, mayhem, robbery, burglary or kidnapping and certain storehouse breaking and housebreaking offenses, is murder in the first degree. Code, Art. 27, § 410.

In *Boone v. State, supra,* this Court was dealing with inconsistent jury verdicts whereby the appellant was found guilty of *both* the consummated crime and armed robbery and the attempt to perpetrate the crime. We held that although the better practice under the doctrine of *Heinze v. State,* 184 Md. 613, 617-19, 42 A. 2d 128 (1945) would have been for the trial judge to return the jurors to the jury room "to correct what was patently an inconsistency in the verdict announced by them," the question was not properly preserved in the absence of a motion in arrest of judgment or a request for correction of the record. We also pointed out, however, that since only one sentence was imposed and it was within the penalty prescribed by Article 27, § 488 for *either* of the offenses, there was no prejudice to the appellant.

Defining an attempt in *Boone,* we stated that it "consists of an intent to commit [a crime], the performance of some act towards its commission and the failure to consummate its commission." (p. 114). As *obiter dictum* in *Boone* we also stated that:

> "A failure to consummate the crime is as much an essential element of an attempt as the intent and the performance of an overt act towards its commission. *Evidence that a crime has been committed will not sustain a verdict on an attempt to commit it because the essential element of interception, or prevention of execution is lacking.* Consummation of the crime can take the behavior out of the definition of an 'attempt'. See Clark & Marshall, *Law on Crimes, supra,* Sec. 4.14, citing *People v. Lardner,* 300 Ill. 264, 267, 133 N. E. 375, 19 A.L.R. 721 (1921), where a conviction for an 'attempt to commit larceny' was reversed upon facts which showed the consummation of the larceny." (Emphasis added.)

The *ratio decidendi* of *Boone,* we re-emphasize, is that having been convicted of committing the robbery with a deadly weapon, the appellant could not also be found guilty

under the count charging attempted robbery. *See, Jones v. State,* 3 Md. App. 608 at p. 613, 240 A. 2d 347 (1968).

In *Wiggins v. State, supra,* upon which appellant also relies, the question before us was the sufficiency of the evidence to establish that a homicide committed by appellant was murder in the first degree. We observed at the outset that if the evidence was sufficient to establish that the appellant committed murder in the perpetration of a robbery or in an *attempt* to perpetrate a robbery, the verdict was proper. We there merely cited *Boone* in support of our definition of an attempt as "an act done in pursuance of a criminal intent falling short of the actual commission of the crime, coupled, at least, with the apparent ability to commit the crime intended." (p. 604).

As the opinion of Judge Moylan in *McDuffie v. State, supra,* makes abundantly clear, we were there confronted with an issue similar to that presented in *Boone.* In *McDuffie* there were seven counts of an indictment charging robbery with a dangerous and deadly weapon and lesser offenses, as in the case at bar. The jury rendered a verdict of guilty as to each count. Appellant moved for a mistrial on the ground that convictions of attempted robbery with a deadly weapon under the second count and of attempted robbery under the fifth count were inconsistent. The Court discharged the jury and directed the clerk to enter findings of not guilty on all but the first count.

Explicitly stating that in *Boone, supra,* "this Court was dealing with inconsistent jury verdicts" Judge Moylan pointed out that while we relied there primarily on waiver we also held there was no prejudice to the appellant. We concluded in *McDuffie* that although, unquestionably, it would have been better practice for the Court to have resubmitted the inconsistent verdicts to the jury, we could not say that the trial judge committed prejudicial error when he directed the clerk to enter findings of not guilty on all counts but the first count. We also adverted to the cases of *Tender v. State,* 2 Md. App. 692, 237 A. 2d 65 (1968) and *Price v. State,* 3 Md. App. 155, 238 A. 2d 275 (1968) where inconsistent verdicts were reached by trial judges sitting

without juries. With respect to these cases *McDuffie* observes (p. 271):

> "In each case, there was a verdict finding guilt for the consummated crime of armed robbery and also for the attempt to commit that crime. In neither case did we permit ourselves to be boxed into the logical absurdity of holding that the fact-finder had somehow concluded, beyond a reasonable doubt, both that the defendant had completed the crime and also that he had failed to complete the crime. In each case, recognizing the error for what it was, we simply reversed the judgment of guilt as to the count charging the attempt."

In the instant appeal there also lurks a "logical absurdity" in that, as the District of Columbia Court of Appeals found in *United States v. Fleming*, 215 A. 2d 839 (1966), we are asked to adopt a holding which would create the anomalous situation of a defendant going free "not because he was innocent, but for the very strange reason that he was too guilty." [4]

The predicate for such an anomalous result is the strict analytical view that failure to commit the crime is an indispensable element of criminal attempt. Thus in the landmark case of *People v. Lardner*, 300 Ill. 264, 133 N. E. 375 (1921), on an appeal from a conviction of an attempt to commit larceny under an indictment which charged larceny, it was argued that the evidence in the trial tended to prove the completed offense and therefore there could be no conviction for an attempt to commit a crime resulting in a failure. An Illinois statute under which appellant was found guilty imposed a penalty upon "whoever attempts to commit any offense prohibited by law, and does any act towards it *but fails*, or is intercepted or prevented in its execution." (Emphasis added.) Upholding this contention the Supreme Court of Illinois ruled:

---

4. Citing State of Connecticut v. Shepard, 7 Conn. 54 (1828).

"Evidence that a crime has been committed will not sustain a verdict for an attempt to commit it, because the essential element of interception or prevention of execution is lacking. [citations omitted.] *When an indictment charges an offense which includes within it a lesser offense, the defendant, though acquitted of the higher offense, may be convicted of the lesser; but that rule cannot be applied to an attempt defined by the statute, because an essential element of the attempt is a failure to consummate the crime.* The statute only includes a case where there is a direct, ineffectual act toward the commission of crime. If the evidence for the people proved the defendant guilty of the crime of larceny, he could not be convicted for an attempt which failed." (Emphasis added.)

This, however, is no longer the law in Illinois. *People v. Wallace,* 312 N.E.2d 263 (Ill. 1974). In 1961, the present Illinois Criminal Code was adopted wherein "attempt" was redefined as follows, deleting the element of failure:

"A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." Ill.Rev.Stat.1963, ch. 38, par.8-4(a).

In *Wallace,* the Supreme Court of Illinois affirmed a conviction of attempted bribery, holding that even if the evidence might have established completion of the offense, a conviction for the lesser included offense of attempt was permissible. The Court found, within "Committee Commentary" to the new Criminal Code a "legislative intent to abrogate the necessity that the criminal act fail as a prerequisite to prosecution for attempt." Accordingly the Court concluded as follows, citing *United States v. Fleming, supra:*

"We are of the opinion that even if the evidence presented might establish the completion of the

offense, as here, conviction for the lesser included offense of attempt is permissible."

Other jurisdictions, notably Michigan, had earlier rejected the original Illinois rule. In a leading case for the contrary view, *People v. Baxter*, 222 N. W. 149 (Mich. 1928), appellant had been charged in one count with bribery and in another count (involving the same facts) with attempt to bribe. The jury returned a verdict of conviction of attempt. Affirming this conviction, the Supreme Court of Michigan held:

> "Defendant invokes the rule, operative in some jurisdictions by judicial holdings, and in others by \statute, that there can be no conviction of an attempt to commit a felony if the evidence establishes consummation of the felony. *This is the rule in Illinois. People v. Lardner,* (1921), 300 Ill. 264 (133 N.E. 375, 19 A.L.R. 721). *But the rule is not general, and does not prevail in this jurisdiction.* If an information admits of conviction of an attempt to commit a felony, an accused may be found guilty of the attempt, though the evidence shows a completed offense. *People v. Miller,* (1893), 96 Mich. 119 [55 N. W. 675]; *People v. Blanchard* (1904), 136 Mich. 146 [98 N. W. 983]. *Such a verdict may be illogical, but the people cannot complain, and the defendant must accept it, even though less in measure than his just deserts; at least he cannot be heard to say that he has suffered injury."* (Emphasis added.)

*See also State v. Mahoney,* 97 N. W. 1089 (Iowa 1904) and *State v. Fox,* 159 N.W.2d 492 (Iowa 1968); *People v. Miller,* 184 N.W.2d 286 (Mich. 1971); *State v. McCoy,* 277 A. 2d 240 (N.J. 1971), citing *State v. Mathis,* 221 A. 2d 529 (N.J. 1966); *Nielson v. State,* 437 S.W.2d 862 (Texas 1969); *Crump v. State,* 287 N.E.2d 342 (Ind. 1972).

In *Crump v. State, supra,* the Supreme Court of Indiana overruled a contention that the crime of attempted arson is not a lesser included offense of the crime of first degree

arson, rejecting the rule of *People v. Lardner, supra,* and adopting the rule of *People v. Baxter, supra,* in the following language:

> "Reasoning such as this was adopted in *People v. Lardner* (1921), 300 Ill. 264, 133 N.E. 375, wherein the court reversed a conviction for *attempted* larceny where the indictment charged the defendant with the crime of larceny. However, the opposite result was reached in *People v. Baxter* (1928), 245 Mich. 229, 222 N.W. 149, where the court expressly rejected the Illinois rule. We are of the opinion that the rule set forth in *Baxter* is more logical. It should make no difference whether the criminal conduct is successful or unsuccessful when determining an included offense. The conduct is the same in both cases; the actor's intent is the same in both cases."

It is thus seen that *Lardner* derived its rationale from the prior statutory definition of attempt which included a failure of completion and that the split of jurisdiction represented by *Baxter* was based upon a rule held to be more "logical."

But there are, to be sure, historical origins for the notion that failure to commit a crime is an indispensable element of criminal attempt. *See,* Perkins, *Criminal Law,* 2nd Ed., p. 552, *et seq.* 1969 and *see* Arnold, *Criminal Attempts,* 40 Yale Law Journal 53. Professor Perkins, in his penetrating analysis of "Attempt and Kindred Problems" in the work above cited points out that under the English common law the procedure for the trial of a misdemeanor was so different from that for the trial of a felony as to preclude a joinder of the two in the same indictment. As Judge Prescott, later Chief Judge, pointed out in *Veney v. State,* 227 Md. 608, 177 A. 2d 883 (1961) these differences included the right to exercise challenges of jurors, the privilege of counsel and the substantive difference that a conviction of felony entailed a forfeiture of property to the Crown.

One of the consequences of such differences, as Professor

Perkins observed, was the development of a rule that if the same act resulted in both a misdemeanor and a felony, the former was merged in the latter. Furthermore, with respect to attempts, since an attempt to commit any indictable offense was punishable as a misdemeanor at common law, it followed that if an attempt to commit a felony was successful the attempt was merged in the felony and there could be no conviction of the misdemeanor. This, the author points out, was merely an application of the general doctrine of merger [5] and was not based upon any notion that the law of criminal attempt requires failure. In sum, Perkins concludes:

> "Hence, under the English common law, one being tried for felony could not be convicted of an attempt to commit the offense charged. This was not due to any peculiarity in the law of attempt, nor was it dependent in any way upon the proof in the particular case. It was merely an application of the general rule of procedure which did not permit conviction of a misdemeanor in a felony trial." (p. 555)

And further:

> "Peculiarities in the criminal procedure in England in the early days may have given adequate support, at that time, for the rule that there could be no conviction of misdemeanor under an

---

5. The common law doctrine of merger no longer exists in Maryland. Tender v. State, 2 Md. App. 692, 237 A. 2d 65 (1968), *supra*. By statute, Code, Art. 27, § 607, any offense which is a misdemeanor at common law and which may have been made a felony by statute is not merged in the felony and the indictment may contain counts for the felony and also for the misdemeanor. A more modern concept of merger of offenses does exist. Williams v. State, 205 Md. 470, 109 A. 2d 89 (1954); Bennett v. State, 229 Md. 208, 182 A. 2d 815 (1962). As Chief Judge Orth stated in Tender v. State, *supra*, the true test under the modern concept of merger of offenses is whether one crime necessarily involves the other. *Cf.* Rule 31 (c) Federal Rules of Criminal Procedure: "The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense."

indictment for felony. However that may be, the procedure in this country does not do so, and the prevailing view here is that such a conviction may be upheld." (p. 555-6)

The historical background of this issue, particularly as related in Perkins, *Criminal Attempt and Related Problems*, 2 U.C.L.A. Law Rev. 319 (1955), was carefully considered by the District of Columbia Court of Appeals in *United States v. Fleming*, 215 A. 2d 839 (1966), *supra*, where the defendant was charged with attempted sodomy and the government's proof at trial established a completed act. There, a general attempt statute provided:

"Whoever shall attempt to commit any crime, which attempt is not otherwise made punishable by this title, shall be punished by a fine not exceeding one thousand dollars or by imprisonment for not more than one year, or both." D.C. Code 1961, § 22-103.

Rejecting appellant's contention that the evidence of a completed act mandated an acquittal on the charge of attempt, Chief Judge Hood stated for the Court:

*"Our conclusion is that the rule that a defendant charged with an attempt must be acquitted if shown to have committed the full offense has today no reasonable basis and should be rejected.* We agree with the following statement from *People v. Baxter*, 245 Mich. 229, 222 N. W. 149, 150 (1928): 'If an information admits of conviction of an attempt to commit a felony, an accused may be found guilty of the attempt though the evidence shows a completed offense.' "

The distillation of the aforegoing authorities is, we think, this: that under Maryland law the element of failure remains an essential part of criminal attempt; but it is not an essential element of attempt for *all* purposes.[6] There is no

---

6. Arnold, op. cit. supra, p. 73, n. 60.

general statutory definition of criminal attempt as in the District of Columbia and other jurisdictions; and the common law definition of the term under the decided cases in Maryland still includes the element of failure to commit the crime. However, upon the basis of reason and authority, it is our conclusion that where an accused is charged with both the crime and the attempt to commit it and the evidence has established that the crime was in fact committed, he may be acquitted of the crime and yet convicted of the attempt. No Maryland precedent requires a different result.

The final two issues presented, the legality of the arrest and competency of counsel, were not briefed nor argued and are not before us. *Hyde v. State*, 228 Md. 209, 179 A. 2d 421 (1961), *cert. denied* 372 U. S. 945. Alleged inadequacy of counsel was not raised below and therefore would be reviewable only in post conviction proceedings.

*Judgments affirmed.*