MELVIN ALFONZO CROSS A/K/A "TEEJAY" *v.* STATE OF MARYLAND

[No. 1042, September Term, 1976.]

*Decided June 13, 1977.*

The cause was argued before MOYLAN, POWERS and MOORE, JJ.

*Robert B. Levin, Assigned Public Defender,* with whom were *Frank, Bernstein, Conaway & Goldman* on the brief, for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Wehland, State's Attorney for Howard County,* and *Gary S. Peklo, Assistant State's Attorney for Howard County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Melvin Alfonzo Cross, was convicted by a Howard County jury, presided over by Judge Joseph Mattingly, of grand larceny. Upon this appeal, he raises five contentions, the first four of which are interestingly intertwined:

(1) That a new trial should have been granted because the jury's verdicts of guilty of both larceny and receiving stolen goods were inconsistent and, therefore, fatally defective;

(2) That the evidence was not legally sufficient to support the grand larceny verdict;

(3) That irrelevant testimony from one Cindy Brosenne was erroneously admitted;

(4) That prejudicial evidence of another crime was erroneously admitted; and

(5) That an in-court identification was the product of an impermissibly suggestive pretrial photographic viewing.

## The Inconsistent Verdicts

The jury returned verdicts against the appellant of guilty of grand larceny and guilty of receiving stolen goods, both charges arising out of the same incident. The appellant is absolutely correct in his major premise that "a defendant cannot be both a thief and a receiver when it is apparent that the property alleged to have been stolen is the same as that alleged to have been received." *Bell v. State*, 220 Md. 75, 81, 150 A. 2d 908. It is also true "that a general verdict of guilty on two inconsistent counts, such as larceny and receiving, is defective." *Id.*, at 80; *Heinze v. State*, 184 Md. 613, 42 A. 2d 128. The question before the Court, however, is not that of whether the verdicts were inconsistent but rather that of what should be done when such inconsistencies unfortunately occur.

The appellant urges further that the best of all solutions, when such inconsistent verdicts are rendered, is to send the jury back to the jury room, with appropriate instructions, so that they can exercise their choice between the verdicts, either of which might be appropriate but both of which cannot. He quotes correctly from *Heinze v. State*, at 184 Md. 618, that "it is the safer practice to send the jury back to their room with instructions as to the corrections that ought to be made, so that they can amend the verdict as they think proper unhindered by the presence and possible influence of others." To the same effect, we said in *McDuffie v. State*, 12 Md. App. 264, 267, 278 A. 2d 307:

"It is clear that in the case now before us, the better procedure would have been for the trial judge to have asked the jury to return to the jury room and, if they were indeed intent upon returning a verdict

of guilty under the first count charging robbery with a dangerous and deadly weapon, then to return verdicts of not guilty on the other counts. . . ."

Although this would indisputably be the best of all remedies, the flaw in the appellant's argument is that nobody, significantly including the appellant, even spotted the problem, let alone suggested the preferred remedy, at the time it occurred. The rendition of the jury verdicts occurred as follows:

"(THE JURY RETURNED TO THE COURT ROOM AT 4:55 P.M. WITH A VERDICT AS FOLLOWS:)

| | |
|---|---|
| Count Two—Breaking and Entering | Not Guilty |
| Count Three — Grand Larceny | Guilty |
| Count Five — Receiving Stolen Goods | Guilty |

Whereupon, by request of Defense Counsel, the Jury was polled and all twelve answered in the affirmative. The jury was then dismissed.

MR. GOLDBERG: Your Honor, for the record, the Defense requests a PSI.

THE COURT: Very well, sir. A pre-sentence report is therefore ordered and sentence will be delayed pending the receipt of the report from the Parole Department.

MR. GOLDBERG: Thank you, Your Honor.

MR. PEKLO: Thank you, Your Honor.

THE COURT: Thank you.

COURT RECESSED AT 5:10 P.M."

The short answer to the contention would be simply to point out that the issue has not been preserved for appellate review. Maryland Rule 1085. In *Bell v. State, supra,* a case also involving inconsistent verdicts of guilty of both larceny and receiving, the Court of Appeals made it clear that the

failure to raise the issue at the trial court could be dispositive, saying at 220 Md. 81:

"When a verdict of guilty is rendered on inconsistent counts, the defendant has a right to require the trier of facts to specify on which of the counts he is guilty, *but it is a right which may be waived. Since the question was not raised below in any manner, it may be that the defendant waived the inconsistency.*" (Emphasis supplied)

We spoke to the same point in *Thomas v. State*, 2 Md. App. 645, 648, 236 A. 2d 747:

"The next complaint concerns the conviction of grand larceny and receiving stolen goods on the basis that the counts were mutually exclusive. It is true that the verdict is inconsistent, however, there was no objection below and there was no prejudice."

In the exercise of our discretion, however, we would go further and address the merits. Even if the point had been preserved for appellate review, it would avail the appellant little. The trial concluded with the rendering of the verdicts on April 20, 1976. The appellant first raised the question of inconsistent verdicts at the hearing on his Motion for a New Trial on September 24, 1976. The jury had not simply been dismissed but it had, as of then, been totally dispersed for over five months. There was no way under the sun that that jury could be reconstituted. The sole thrust of the appellant's argument both upon the Motion for a New Trial and before this Court was not for such corrective action as was still available to the court, but for a complete reversal and a remand for a new trial before a new jury. The injury did not compel so radical a cure.

The State had, in the meantime, taken corrective action of its own. It nolle prossed the charge of receiving stolen goods so that the only sentence ultimately imposed was for the conviction of grand larceny. The appellant now questions the power of the State's Attorney to enter a nolle pros after a verdict has been rendered by the fact finder. Although we

perceive no impediment to the entering of a nolle pros by the State at that stage of the proceedings,[1] the entry of the nolle pros is not the subject of this appeal. The judgment appealed from was the sentence upon the conviction of grand larceny. We are concerned not with the method by which the conviction for receiving stolen goods was dissolved, but with the propriety of the conviction for grand larceny remaining undissolved.

The ultimate harm flowing from inconsistent verdicts is not the possibility that the jury may have been confused in its decisional process (for illogical and "compromise" jury verdicts are countenanced without question, if not indeed without power to question) but rather the risk that a defendant will erroneously be subjected to double and inconsistent punishments. That threat was removed in this case by the State's prompt dismantling, via the nolle pros, of one horn of the dilemma. The appellant was relieved of potential prejudice. That the agency of that relief happened to be the State's Attorney rather than the trial judge is of no moment.

The appellant would have us believe, however, that the inconsistency of the jury was in and of itself a sin beyond redemption, except at the hands of that jury. We cannot take so stern an attitude toward the technical missteps that frequently bedevil the complicated and snare-strewn trial process. The philosophy, rather, which invigorates our

---

1. Indeed, *United States v. Brokaw*, 60 F. Supp. 100, 102 (S. D. Ill., 1945), is strongly persuasive in this regard:

"The rule at the common law seems to have been, and in the present-day common law courts to remain, that prior to trial the prosecutor has the absolute uncontrolled power to enter a nolle prosequi; that after the empaneling of the jury until the return of the verdict the power is subject to the control of the court since it may not be used at that time to the prejudice of the defendant; and that following the return of the verdict the uncontrolled power of the prosecutor to enter a nolle revives and continues until such time as judgment is entered and sentence imposed. [Lengthy list of citations omitted]

The foregoing array of authorities and the lack of holdings to the contrary seem to establish the doctrine as presented by the recognized texts, including Corpus Juris Secundum, beyond question."

508

approach was that quoted with approval by the Court of Appeals in *Heinze v. State, supra,* at 184 Md. 619. The words were those of Chief Justice Paxson in *Appeal of Nicely,* 130 Pa. 261, 18 A. 737, 739:

> "There was a time in the history of the English criminal law when great crimes were left unpunished because of harmless, technical errors. This greater strictness was perhaps due to the fact that at that period the Criminal Code was especially bloody. Capital punishment was inflicted for very trifling offenses; and, it may be, the judges sought to ameliorate its rigor by holding the crown to the observance of the nicest technicalities. * * * With the advancement of judicial science, and a more enlightened administration of the law, mere technicalities are less regarded, where they work no harm to a defendant."

These words were applied in *Bell v. State, supra,* where the Court of Appeals declined to reverse on the basis of inconsistent verdicts, absent ultimate prejudice. It said, at 220 Md. 81:

> "In any event, the court passed but one sentence of a year's duration and then provided that it should run concurrently with the previous sentence of three years for the receiving and unauthorized use of the automobile referred to in the first indictment. Since it does not appear that the defendant has been prejudiced [*Heinze v. State, supra*] by the rendition of inconsistent verdicts under the second indictment, we see no reason to make such inconsistency the basis for a remand of the case for further proceedings or a new trial. *Novak v. State,* 139 Md. 538, 115 A. 853 (1921)."

Similar results were reached in *Hardesty v. State,* 223 Md. 559, 165 A. 2d 761; *Novak v. State,* 139 Md. 538, 115 A. 853; *Price v. State,* 3 Md. App. 155, 238 A. 2d 275; *Tender v. State,* 2 Md. App. 692, 237 A. 2d 65; and *Boone v. State,* 2 Md. App.

80, 117, 233 A. 2d 476. In terms of diagnosing what probably happened and the innocuous nature of the happening, we feel in this case exactly as we did, in looking at a patient with similar symptoms, in *McDuffie v. State, supra,* at 12 Md. App. 267-268:

> "A common-sense review of what transpired, however, permits of no other conclusion than that the jury found the appellant guilty under the most major count — robbery with a dangerous and deadly weapon — and then, subsidiarily but erroneously, concluded that all of the other counts were lesser-included constituent parts of the major count and that a finding of guilt thereon was logically compelled. . . .
>
> To forestall any danger of multiple convictions and multiple sentencing on either the lesser-included or the inconsistent counts, the trial judge promptly directed the clerk to enter verdicts of not guilty on counts 2 through 7. The appellant was sentenced only upon the first count, of which the jury obviously found him to be guilty. We feel that he, thereby, suffered no prejudice."

In this case, the evidence (as we shall presently see) was legally sufficient for the judge to let the charge of grand larceny go to the jury. The jury found the appellant guilty of grand larceny beyond a reasonable doubt. The appellant was ultimately sentenced only for the crime of grand larceny. Whatever traps and snares there may have been along the path have now been rendered moot. We perceive no prejudice.

### The Legal Sufficiency of the Evidence

Our analysis of the legal sufficiency of the evidence to establish grand larceny has two aspects to it. In a moment, we shall assay the affirmative evidence in terms of its sufficiency to establish the necessary elements of the crime of grand larceny. Initially, it is meet to comment upon the

510

jury's ultimate finding as to receiving in terms of its arguably erosive effect upon the evidentiary sufficiency as to larceny. The motion that the finding of guilt as to receiving *ipso facto* represents a finding that the appellant was not the thief and that it, therefore, fatally erodes the legal sufficiency of the evidence as to theft is without any persuasiveness whatsoever. Yet, just such arguments are regularly made whenever a jury renders inconsistent verdicts. The answer to such arguments is twofold.

Secondarily, one half of the inconsistent verdict serves to demolish the creaking edifice of strained reasoning erected upon the other half. The direct jury conclusion, necessary for the larceny verdict, that the appellant was the thief refutes the deduction, flowing from the receiving conviction, that the jury somehow found that the appellant was also not the thief. There are too many plausible explanations of how a jury comes up with inconsistent results to let defense exercises in arid logic unduly trouble us. Even when inconsistent verdicts are rendered by legally trained judges, we recognize that what is called for is simply the untangling of a procedural or logical snarl and not the aborting of an entire adjudicative process that was itself free from fatal snarls. It was of this very problem that we spoke in *McDuffie v. State, supra,* at 12 Md. App. 271:

> "In both *Tender v. State, supra,* [2 Md. App. 692] and *Price v. State, supra,* [3 Md. App. 155] inconsistent verdicts were handed down by trial judges, sitting without juries. In each case, there was a verdict finding guilt for the consummated crime of armed robbery and also for the attempt to commit that crime. In neither case did we permit ourselves to be boxed into the logical absurdity of holding that the fact-finder had somehow concluded, beyond a reasonable doubt, both that the defendant had completed the crime and also that he had failed to complete the crime. In each case, recognizing the error for what it was, we simply

reversed the judgment of guilt as to the count charging the attempt." [2]

More significantly, nothing that the fact finder does in the deliberative stage of the case can conceivably have any bearing whatsoever upon the question of the legal sufficiency of the evidence. A criminal trial has at least three distinct stages which are pertinent to the present analysis. One is the adjudicative stage, wherein all evidence is adduced that will go to the fact finder. Only after that adjudicative stage has been completed do we enter into the deliberative stage, in the course of which the fact finder weighs the evidence earlier adduced and reaches a verdict. At the conclusion of the deliberative stage, we enter into the judgmental stage. If the verdict of the deliberative stage is guilty, the judgmental stage consists of imposing an appropriate sentence; if the verdict of the deliberative stage is not guilty, the judgmental stage is a simple, "Hail and farewell."

When we measure the legal sufficiency of evidence, we do so at the control point where the adjudicative stage connects with the deliberative stage. The judge, either at trial or on appeal, is sitting at a sluice gate measuring the flow of evidence from the adjudicative stage into the deliberative stage. If it is not sufficient, quantitatively and qualitatively, the trial is terminated and the deliberative stage never begins. If it is sufficient, the deliberative stage does begin. That stage is in the unfettered control of the fact finder. We may not inquire into that decisional process, beyond seeing that it was kept free from contaminating external influences.

In terms of measuring the legal sufficiency of the evidence, the situation is frozen as of the moment when the deliberative process is permitted to begin. This is true whether the fact finder be a jury or a judge. As Judge Orth

---

**2.** The intellectual miasma which threatened to stifle the decisional process in *McDuffie, Tender* and *Price*, above, has since been swept away by the welcome fresh air of *Lightfoot v. State,* 25 Md. App. 148, 334 A. 2d 152, and *Lightfoot v. State,* 278 Md. 231, 360 A. 2d 426, declaring that "failure to consummate" is not an element of the crime of attempt.

meticulously and lucidly brought out in his pioneering analyses of the process in *Williams v. State*, 5 Md. App. 450, 247 A. 2d 731, and *Metz v. State*, 9 Md. App. 15, 262 A. 2d 331, we ask only whether the evidence is sufficient, as it passes that control point, to permit the fact finder, court or jury, to be convinced beyond a reasonable doubt. What the fact finder then does with legally sufficient evidence — logical or illogical, cogent or fanciful, consistently or by way of compromise, by sound avenues of reasoning or by nonsensical blind alleys of the mind, by thought or by prayer, by deduction or by intuition — is forever beyond our ken and beyond our power to review. We control simply what goes into that process, not the process itself nor what comes out of it.

When the deliberative stage moves into the judgmental stage, we do have limited control over inconsistent verdicts. This, however, is simply to see that a defendant is not punished twice for two offenses, either of which he could have committed but both of which he could not have committed. This control, for sentencing purposes, has nothing whatsoever to do with the question of legal sufficiency. The determination to open the sluice gate and let the deliberative process begin is right or wrong at the moment it is made. Nothing that happens thereafter can date back to make its propriety other than it was at that instant when it was frozen in time for purposes of appellate review. Legal sufficiency is not concerned with whether the fact finder *did* the right thing. It is rather concerned with whether the fact finder had sufficient raw material with which to work so that he *could have done* the right thing. It is a problem of supply and not of execution.

In this case, the ultimate jury verdicts can have no bearing on the trial judge's earlier determination that the evidence was legally sufficient to let the case go to the jury, because subsequent events cannot, by definition, relate back to influence anterior decisions.

We now turn our attention to the affirmative evidence in the case, as the trial judge, directed by the appropriate motion, measured the evidence passing the control point

between the adjudicative stage and the deliberative stage and determined that it was sufficient to trigger deliberation.

The home of Mr. and Mrs. Robert L. Fridell, in Howard County, was burglarized at approximately 4 p.m. on Sunday, February 15, 1976. Forty-seven items of personal property were discovered to be missing, including a diamond engagement ring, which had been owned by Mrs. Fridell for 42 years, which was split where it finally had to be cut from her finger and which had been kept in a cigarette box in the den of the Fridell home. That ring, later identified by Mrs. Fridell, could be traced to an automobile owned by the appellant. Although the ring was not literally recovered by the police until February 18, three days after the burglary, it could inferentially be located in the appellant's car as early as February 16, one day after the burglary. The evidence established that the appellant's automobile was involved in an accident in Prince George's County on February 16. The automobile was towed to a filling station in Bowie. On that same day, the appellant presented himself to the operator of the towing business at the filling station and displayed a release form from the police for personal property contained in the vehicle. He removed a number of items of personal property. His automobile was subsequently moved to the police impounding lot, where a search on February 18 revealed the diamond ring.

For whatever reasons, the appellant offered no explanation for the presence of the recently stolen ring in his automobile. Nor for that matter did he offer any explanation by way of indicating that his automobile had not been in his possession during the period February 15-February 16. If it had been stolen, he did not say so. If it had been loaned to others, he did not say so. The jury was at liberty to infer that if he offered no explanation, either as to the ring or as to the car, it was because he had no explanation to offer. The state of the evidence at this point was well described by Judge Orth for this Court in *Boswell and Poe v. State,* 5 Md. App. 571, 577, 249 A. 2d 490:

> "The constitutional right of a defendant not to incriminate himself and the prohibition against

adverse comment and inference from his failure to testify does not protect him from the probative force of the evidence against him. If he does not attempt to rebut the incriminating fact that he was the possessor of property recently stolen, he cannot, merely by remaining silent, escape the natural and reasonable inferences deducible from such fact. . . . Thus it is relevant for the defendant to offer evidence of facts and circumstances showing that his possession was innocent; for example, that he found the goods, that he came into possession under an honest belief that it belonged to him; that upon discovering the mistake, he had sought out the owner and paid the value of the property or returned the property itself; that he purchased the property. In explaining the possession he may prove from whom he got them and what the parties said at the time. And it is relevant for him to offer evidence of what he said, or what explanation he gave, at the time when he was first found with the property in his possession."

In this case, the appellant chose to explain nothing.

The presence of the stolen ring in the appellant's automobile, absent even a suggestion that the automobile had been in the control of another, is sufficient to establish "exclusive possession of recently stolen goods" within the contemplation of our case law. The State is certainly not required to negate, *in vacuo*, a remote possibility that the police or the towing service operator "planted" the ring, into the possession of which they had mysteriously come, in the appellant's automobile for some unexplained purpose.

Nor does the fact that both the appellant and a second person had been observed in the appellant's car on the afternoon of February 15, at about the time of the burglary, present any problems in terms of exclusivity. As we made very clear in *Brown v. State*, 8 Md. App. 224, 225-226, 259 A. 2d 85:

"The term 'exclusive' is also a relative one and its meaning as applied to a given case will vary with

the circumstances of the case. We discussed fully the meaning of 'exclusive' in this context in *Boswell and Poe v. State*, 5 Md. App. 571, 576-579. We said that it is in the sense of a personal possession and an assertion of property, express or implied by the exercise of dominion and right of disposal, that the possession is exclusive. So the possession of stolen property is exclusive if it shows exclusion of all persons who are not parties to the crime, although as to accomplices, the possession of one is the possession of all. Thus the possession to be exclusive, need not necessarily be in one person and may be a joint possession of several persons. See *Davis and Napier v. State*, 7 Md. App. 667."

From this legally sufficient evidence of exclusive possession of recently stolen goods, what inferences may flow? There are several. The fact finder may infer that the possessor is a receiver of stolen goods. He may, alternatively, infer that the possessor was the thief (or if the theft was a compound one, that the possessor was also the burglar, the robber, the murderer, etc.). In terms of legal sufficiency, any of these inferences is permitted. The variety of the permitted inferences from the fact of possession was described by the Court of Appeals in *Brewer v. Mele*, 267 Md. 437, 449, 298 A. 2d 156:

"We have long and consistently held that exclusive possession of recently stolen goods, absent a satisfactory explanation, permits the drawing of an inference of fact strong enough to sustain a conviction that the possessor was the thief, *Cason v. State*, 230 Md. 356, 187 A. 2d 103 (1963); *Stapf v. State*, 230 Md. 106, 185 A. 2d 496 (1962); *Lewis v. State*, 225 Md. 474, 171 A. 2d 244 (1961); *Glaros v. State*, 223 Md. 272, 280, 164 A. 2d 461 (1960); *Debinski v. State*, 194 Md. 355, 359-360, 71 A. 2d 460 (1950); or, under appropriate circumstances, that the possessor was a receiver of stolen goods, *Jordan v. State*, 219 Md. 36, 148 A. 2d 292 (1959); *People v. Galbo*, 218 N. Y. 283, 112 N. E.

1041, 1044 (1916); or, where the theft was compounded, that the possessor was also the burglar, *Anglin v. State*, 244 Md. 652, 224 A. 2d 668 (1966); *Howard v. State*, 238 Md. 623, 209 A. 2d 604 (1965); *Boggs v. State*, 228 Md. 168, 179 A. 2d 338 (1962); *Ponder v. State*, 227 Md. 570, 177 A. 2d 839 (1962); *Oden v. State*, 223 Md. 244, 164 A. 2d 284 (1960); *Butz v. State*, 221 Md. 68, 156 A. 2d 423 (1959); *Felkner v. State*, 218 Md. 300, 146 A. 2d 424 (1958); or the robber, *Booker v. State*, 225 Md. 183, 170 A. 2d 203 (1961)."

We addressed ourselves to the same variety of permitted inferences drawable from the single fact of possession, in *Brown v. State, supra*, at 8 Md. App. 226:

"The fact inferred from such guilty possession by the accused fixes his identity as the offender — that he was the criminal agent. Proof of the *corpus delicti* of the crime may establish the offense he committed. Thus where a burglary is proved to have been committed, the possessor of goods stolen therein may be found to be the burglar, *Anglin v. State*, 1 Md. App. 85; where a storehouse breaking is proved the possessor of goods taken therefrom may be found to be the one who broke the storehouse, *Jones v. State*, 5 Md. App. 180; where a larceny is proved the possessor of goods stolen may be found to be the thief, *Frey v. State*, 3 Md. App. 38. However, if there is credible evidence that the possessor of the goods was not a principal in the burglary or storehouse breaking or larceny, he may be found to be a receiver of stolen goods, *Boblits v. State*, 4 Md. App. 534."

Although, as will be hereinafter discussed in other contexts, there was additional evidence placing the appellant near the crime scene at the time of the burglary, it is unnecessary to catalog that evidence yet. In order to cross the bare threshold in terms of legal sufficiency to establish the appellant's criminal agency as to larceny, the showing of

exclusive possession in him (not necessarily upon his person) is enough. For this purpose, all else is surplus.

### The Relevance of the Testimony of Cindy Brosenne

As of the moment when the deliberative stage of the case began, the fact finders had before them evidence from which they were permitted to infer, beyond a reasonable doubt, that the appellant was either a receiver of stolen goods or a thief/burglar. They were not, however, permitted to infer both. Their responsibility, had they properly carried it out, was to choose between. The choice before them was aptly described by Judge Cardozo in *People v. Galbo*, 112 N. E. 1041, 1044 (N.Y., 1916):

> "Only half of the problem, however, has been solved when guilty possession fixes the identity of the offender. There remains the question of the nature of his offense. Here again the facts must shape the inference. Is the guilty possessor the thief, or is he a receiver of stolen goods? Judges have said that, if nothing more is shown, we may take him to be the thief. * * * But as soon as evidence is offered that the theft was committed by someone else, the inference changes, and he becomes a receiver of stolen goods."

In this regard, any evidence, direct or circumstantial, which would help the fact finder to tilt intelligently one way or the other would be, by definition, relevant and, therefore, admissible. As the guilty possessor of recently stolen goods oscillates between the competing poles of theft and receiving, his demonstrated proximities in time and space to the theft are significant magnets pulling him in that direction.

In terms of such proximities, the testimony of Cindy Brosenne was significant. She worked at a Howard County liquor store. She unequivocally identified the appellant as the young man who, along with a white male companion, came into her store on Sunday afternoon, February 15. The place was within two and one-half miles of the burglarized

home of the Fridells. The time was between 3:30 p.m. and 4:30 p.m., within one-half hour of the time of the burglary. She further testified that the appellant purchased a six-pack of Michelob beer, a circumstantial link with the further proximities established by the testimony of Hugh Buffington, which testimony will be discussed in dealing with the next contention. The appellant argues, "It is submitted that this testimony was irrelevant and the fact that an accused is seen two and one-half miles from the crime scene does not tend to establish his guilt of a crime committed at that scene."

What is relevant and what is irrelevant depends upon the unique facts of each case. In this case, the appellant lived in Hagerstown. He put on alibi testimony which placed him in Hagerstown on the afternoon of the crime. If all the State had was the permitted inference arising from his possession of the stolen ring a day later in Prince George's County, the fact finders might well not have concluded that the appellant was the thief beyond a reasonable doubt. Against that backdrop of geography, the testimony of Cindy Brosenne took on a probative value that it might not have possessed in other circumstances. Distance and time are relative values and not absolutes. To place a suspect within two and one-half miles of a crime scene and 70 miles from home is a far cry from placing a suspect within two and one-half miles of a crime scene and several blocks from home. In a crowded city, to place a resident suspect within ten blocks of a crime and an hour of the crime may prove nothing. If, on the other hand, a librarian from Kansas City is suspected of a jewel theft in Istanbul, to place her in the Athens Airport, 500 miles away from the crime scene, within several days of the crime, may prove a great deal. Fact finders do not look at where a person is, in a vacuum. They look at where a person is in relation to where a person came from. Once two points have been established, we have not simply locus but movement.

The appellant urges that such proximity in time and place is not nearly enough to establish his criminal agency as the thief. He is quite right, but that is not the test of relevancy.

McCormick, *The Law of Evidence* (1st Ed., 1954), discusses relevance at p. 317:

"This same practice of determining the admissibility of items of evidence singly as they are offered leads to another distinction, often stressed in judicial opinions. This is the distinction between relevancy and sufficiency. The test of relevancy, which is to be applied by the trial judge in determining whether a particular item or group of items of evidence is to be admitted is a different and less stringent one than the standard used at a later stage in deciding whether all the evidence of the party on an issue is sufficient to permit the issue to go to the jury. A brick is not a wall."

The Supreme Court spoke in a similar vein in *McCandless v. United States*, 298 U. S. 342, 347, 56 S. Ct. 764, 766, 80 L. Ed. 1205 (1936):

"[A]n offer of proof cannot be denied as remote or speculative because it does not cover every fact necessary to prove the issue. If it be an appropriate link in the chain of proof, that is enough."

As Dean McCormick points out, at 318:

"[T]he most acceptable test of relevancy is the question, does the evidence offered render the desired inference *more probable than it would be without the evidence?*" (Emphasis in original text)

By way of answer to that question, the testimony of Cindy Brosenne placing the appellant 70 miles away from his alibi, within two and one-half miles of the crime scene, within 30 minutes of the crime, does render the inference that he was, indeed, the thief "more probable than it would be" without such testimony. That, by definition, is relevance.

*The Admissibility of Evidence of Another Crime*

The appellant takes great umbrage at the testimony of one Hugh Buffington. Mr. Buffington was a resident of

Catonsville, near the western border of Baltimore County and close, therefore, to Howard County. Mr. Buffington testified that he was returning to his home at approximately 6:30 p.m. on Sunday, February 15, 1976, when he noticed a 1967 blue Chevrolet backed into his driveway. He noticed further that the doors to his house had been torn out. He immediately took down the license number of the strange car and went to a neighbor's home to call the police. By the time he returned to his own home, the Chevrolet had driven away across his lawn. Both the description of the automobile and the license number established that the automobile was that of the appellant. Mr. Buffington testified further that he found a Michelob beer bottle lying on his lawn, after the strange car drove away.

There is no gainsaying the fact that this testimony established that a crime was in progress and had, therefore, a potential for embarrassing the appellant in the present case by revealing to the jury a propensity to commit crime. The natural inclination of the law is to exclude such evidence, but there are exceptions where its probative value makes it nonetheless admissible. We discussed both the general rule and the exceptions in *Chandler v. State*, 23 Md. App. 645, 649-650, 329 A. 2d 430:

> "It is certainly true, as appellant contends, that evidence of prior offenses committed by an accused are ordinarily not admissible, the theory being 'that the jury may be misled into a conviction for an offense for which the defendant is not indicted, or that he may be prejudiced by the accumulation of offenses which he is not prepared to defend.' *Gorski v. State*, 1 Md. App. 200, 202, quoting Wharton's *Criminal Evidence* (10th ed.). On the other hand, there are several well ingrained exceptions to this general rule. As stated in *Avery v. State*, 15 Md. App. 520, 532, quoting *Gordon v. State*, 5 Md. App. 291, 306:
>
>> '* * * evidence of other crimes is admissible to prove the specific crime charged when

> such evidence tends to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial. To like effect, see *Jones v. State,* 4 Md. App. 445; *Thomas v. State,* 3 Md. App. 708; *Gilchrist v. State,* 2 Md. App. 635; *Loker v. State,* 2 Md. App. 1; *Gorski v. State,* 1 Md. App. 200.'"

See also *Veney v. State,* 251 Md. 182, 198-200, 246 A. 2d 568.

Of the five recognized exceptions, those of 1) motive, 2) intent and 3) absence of mistake or accident have no pertinence in this case. Nor can we agree with the State that the Buffington crime tends to establish "a common scheme or plan." The mere practice of backing a getaway car up to a premises to be burglarized does not, in our judgment, constitute so unusual a *modus operandi* that it could be labeled the "signature" of a particular criminal so as to establish his identity. We do, however, conclude that the fifth exception to the general rule is here applicable. The testimony of Mr. Buffington does tend to establish the identity of the appellant as the thief in the Howard County case.

Mr. Buffington could not identify the appellant himself. He did unequivocally identify the appellant's automobile, both by general description and by specific license tag number. Mr. Buffington's testimony helped to place the appellant in Catonsville, just across the Patapsco River from Howard County within no more than two hours after the Howard County burglary.[3] Neighbors of the Fridells had testified that the two white male burglars operated from a blue Chevrolet matching the description of the appellant's

---

3. Incidentally, Mr. Buffington's testimony served to negate the appellant's alibi that he was in Hagerstown on the afternoon of the crime.

car. The stolen ring was found at a later time in the appellant's blue Chevrolet. Cindy Brosenne's testimony placed the appellant himself near the crime scene, but she did not identify his automobile. Mr. Buffington identified the automobile, but not the appellant. Cindy Brosenne's selling of Michelob beer to the appellant and Mr. Buffington's finding of a Michelob beer bottle after the appellant's automobile had left his lawn tend to bring the appellant and the appellant's automobile together.

With the jury perhaps wavering between drawing a permitted inference of receiving and drawing a permitted inference of theft from the mere possession of the recently stolen ring, the combined testimony of Cindy Brosenne and Hugh Buffington had strong probative force in establishing the identity of the appellant as the actual thief and not as a mere receiver of stolen goods. Under those circumstances, the testimony of Hugh Buffington was properly admitted.

### The In-Court Identification by Cindy Brosenne

The short answer to this contention is that the appellant did not object to the in-court identification made of him by Cindy Brosenne. There is, therefore, nothing preserved for appellate review. Maryland Rule 1085; *Cousins v. State*, 18 Md. App. 552, 308 A. 2d 692.

> *Judgment affirmed; costs to be paid by appellant.*